UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NATURAL RESOURCES DEFENSE COUNCIL,    :
INC.                                  :
                                      :
                    Plaintiff,        :
                                      :
          v.                          :          08 Civ. 2443 (DLC)
                                      :
UNITED STATES ENVIRONMENTAL           :          ECF CASE
PROTECTION AGENCY,                    :
                                      :
                    Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant

SERRIN TURNER
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel. No. (212) 637-2701
Fax No. (212) 637-2686
Email: serrin.turner@gmail.com

# TABLE OF CONTENTS

Preliminary Statement.................................................................................................... 1

Background ..................................................................................................................... 2

A.  Legal Standards for Fee Waivers under FOIA...................................................... 2

B.  Plaintiff's Fee Waiver Request and Appeal......................................................... 3

C.  EPA's Denial of NRDC's Fee Waiver Appeal ...................................................... 4

    1.  Background for EPA's Fee Waiver Denial................................................. 5

    2.  Reasons for EPA's Fee Waiver Denial ..................................................... 8

Argument: EPA's Fee Waiver Denial Should Be Upheld .......................................... 10

A.  Summary Judgment Standard and Standard of Review....................................... 10

B.  EPA Correctly Denied a Fee Waiver Based on NRDC's Failure to Show
How the Documents Sought Are Likely to Contribute Significantly to
Public Understanding of EPA's Decision-Making on EBDC Use on Potatoes.................... 11

C.  EPA Correctly Denied a Fee Waiver on the Ground That NRDC's
FOIA Request Is Not Limited to Documents Concerning EPA's
Decision-Making on EBDC Use on Potatoes ....................................................... 15

Conclusion ................................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*AFGE v. U.S. Dep't of Commerce*, 632 F. Supp. 1272 (D.D.C. 1986).........................................13

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994)...........................................................2

*Citizens for Responsibility & Ethics in Washington v. HHS*,
    481 F. Supp. 2d 99 (D.D.C. 2006) ...............................................................................................15

*Cmty. Legal Servs. v. HUD*, 405 F. Supp. 2d 553 (E.D. Pa. 2005) ..............................................14

*D.C. Tech. Assistance Org., Inc. v. HUD*, 85 F. Supp. 2d 46 (D.D.C. 2000)..............................13

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)..................................................................5

*Forest Guardians v. Dep't of Interior*, 416 F.3d 1173 (10th Cir. 2005) .....................................14

*Friends of the Coast Fork v. U.S. Dep't of the Interior*, 110 F.3d 53 (9th Cir. 1997) ...................4

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ................................................14

*Landmark Legal Found. v. IRS*, 97 Civ. 1474, 1998 WL 762353 (D.D.C. Sept. 22, 1998)...........4

*McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987)....... 2, 13, 17

*USPS v. Gregory*, 534 U.S. 1 (2001) ............................................................................................13

*Van Fripp v. Parks*, 97 Civ. 159, 2000 U.S. Dist. LEXIS 20158 (D.D.C. Mar. 16, 2000) ..........16

*VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55 (D.D.C. 2002) ...................................... 11, 12, 13, 15

<u>Statutes</u>

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ...............................5

Freedom of Information Act, 5 U.S.C. § 552 *et seq.* .......................................................................1

Regulations

40 C.F.R. § 2.107(*l*)(2)(iii)............................................................................................. 11

Regulatory Materials

61 Fed. Reg. 42,244 (Aug. 14, 1996)............................................................................. 6

72 Fed. Reg. 37,771 (Jul. 11, 2007)...................................................................... passim

72 Fed. Reg. 70,586 (Dec. 12, 2007) ........................................................................... 14

## PRELIMINARY STATEMENT

This case concerns a request filed by plaintiff Natural Resources Defense Council ("NRDC") under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), seeking records from defendant United States Environmental Protection Agency ("EPA"), concerning any contacts EPA has had with pesticide manufacturers and other outside entities over the past five years regarding a class of pesticides known as ethylene bisdithiocarbamates, or "EBDCs." NRDC sought a waiver of fees in connection with the FOIA request, which EPA denied. Presently, NRDC moves for partial summary judgment to reverse the agency's decision, in effect seeking to require the public to pay for the costs of responding to its FOIA request.

EPA hereby opposes NRDC's motion, cross-moves for partial summary judgment, and asks that its fee waiver denial be upheld. As explained below, the key premise of NRDC's fee waiver request is its claim that the documents NRDC seeks will significantly contribute to public understanding of governmental operations by illuminating the reasons behind a recent decision by EPA to consider modifying an existing restriction on EBDC use on potatoes. The reasons for the decision have been comprehensively explained in the public record, however, and are supported in extensive documentation readily available to the public. Hence, there is no reason to believe that the documents NRDC seeks will significantly add to the already considerable body of public knowledge on this issue. While NRDC cites the possibility that the documents sought in its FOIA request might reveal improper outside influence on EPA's decision-making, NRDC has no specific basis for such suspicion, and its speculation of malfeasance alone is insufficient to justify a fee waiver.

Further, EPA also appropriately denied NRDC's fee waiver request because the universe of documents NRDC seeks far exceeds the public interest asserted as the basis for its fee waiver request. Whatever the public interest may be in discovering more about the reasons for EPA's

decision to consider modifying existing restrictions governing EBDC use on potatoes, NRDC's

FOIA request is not limited to documents concerning this recent decision; nor is the request even

limited to documents concerning EBDC use on potatoes.  Rather, the request seeks documents

reflecting any contacts EPA has had with industry over the past five years concerning EBDCs *in*

*any way*.  So framed, the request would encompass thousands of documents with no connection

at all to EPA's decision-making concerning EBDC use on potatoes.  Given that the request is not

reasonably tailored to the asserted public interest underlying it, the public should not be required

to pay for the costs of responding to the request.

      For these reasons, this Court should deny NRDC's motion for partial summary judgment

and instead grant partial summary judgment to EPA upholding the fee waiver denial.

## BACKGROUND

**A.      Legal Standards for Fee Waivers under FOIA**

      Ordinarily, a person requesting documents under FOIA must pay the reasonable costs

associated with searching for, reviewing, and copying the records sought.  5 U.S.C.

§ 552(4)(A)(ii)(I).  A FOIA requester is entitled to a waiver of all such fees only where

"disclosure of the information is in the public interest because it is likely to contribute

significantly to public understanding of the operations or activities of the government and is not

primarily in the commercial interest of the requester."  5 U.S.C. § 552(4)(A)(iii).

      A requester seeking a public-interest fee waiver bears the burden of showing that this

standard has been met.  *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994).

Accordingly, at the administrative level, the requester must explain with "reasonable specificity"

and in a non-conclusory fashion how disclosure of the information sought is likely to contribute

significantly to public understanding of government operations or activities.  *E.g.*, *McClellan*

*Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).  In adjudicating

the fee waiver request, it is appropriate for the agency to consider the subject matter pertaining to the requests. *Carney*, 19 F.3d at 814.

**B.    Plaintiff's Fee Waiver Request and Appeal**

On December 14, 2007, EPA received a FOIA request from NRDC seeking "all records reflecting or relating to any contacts, meetings or communications with pesticide registrants[1] and other entities or individuals concerning [EBDC] and pesticide products containing EBDC . . . since August 18, 2003."[2]  Declaration of Serrin Turner ("Turner Decl."), Ex. A at 1.  In conjunction with the request, NRDC sought a public-interest fee waiver based on the claim that the requested documents would "contribute meaningfully and significantly to public understanding of the legal basis, policy justifications, and public health implications of governmental agency risk assessments and potential regulatory action or inaction" concerning EBDCs.  *Id.* at 3.

---

[1] Pesticide "registrants" are entities that are registered with EPA to produce pesticides. *See generally* 7 U.S.C. § 136(y), 136e(a).

[2] NRDC further stated that this request "includes, but is not limited to," the following:

   a)  All records reflecting or relating to any contacts, meetings, or communications with the following entities or individuals:
      1.  the EBDC/ETU Task Force, its agents, or its attorneys;
      2.  the National Potato Council, its agents, or its attorneys;
      3.  attorneys or other employees of the law firm of McDermott, Will & Emery;
      4.  Dow AgroSciences, its agencts, or its attorneys;
      5.  DuPont, its agents, or its attorneys;
      6.  Griffin Corporations, its agents, or its attorneys;
      7.  Cerexagri, its agents, or its attorneys; and/or
      8.  BASF, its agents, it its attorneys.
   b)  All records reflecting or relating to any contacts, meetings, or communications with outside entities or individuals concerning the matter of Request to Reduce Pre-Harvest Interval (PHI) for EBDC Fungicides on Potatoes, EPA-HQ-OPP-2007-0181."

*Id.* at 1-2.

EPA denied NRDC's public interest fee waiver request in a letter dated December 28, 2007, on the ground that the documents requested were "not likely to contribute significantly to public understanding of government operations or activities." Turner Decl., Ex. B. at 1. EPA informed NRDC of its right to appeal the initial fee waiver denial within thirty days. *Id.* at 1-2.

On January 25, 2008, NRDC filed an administrative appeal of the fee waiver denial. Turner Decl, Ex. C. The appeal letter elaborated on NRDC's claim that its FOIA request would contribute significantly to public understanding of governmental operations, explaining that the request was aimed at shedding light on the basis for EPA's "proposed reversal" of a restriction on "the use and application of EBDC fungicides on potatoes nationwide." *Id.* at 4. NRDC claimed in particular that the documents would reveal "the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies" that make EBDCs. *Id.*

## C.    EPA's Denial of NRDC's Fee Waiver Appeal

Although EPA did not respond to NRDC's administrative appeal by the time that NRDC filed the instant complaint on March 11, 2008, the agency ultimately denied the appeal by letter dated April 25, 2008. Turner Decl., Ex. D ("Denial Letter").[3] The Denial Letter declined to

---

[3] NRDC's brief ignores the Denial Letter, save for asserting in a footnote that it is not properly part of the administrative record because it was issued after the initation of litigation. *See* Pls.' Br. at 7 n.3. This assertion is meritless. It is true, as NRDC states, that judicial review of an agency's denial of a fee waiver denial is limited to "whatever reasons for denial it gave in the administrative proceeding." *See id.* (quoting *Friends of the Coast Fork v. U.S. Dep't of the Interior*, 110 F.3d 53, 55 (9th Cir. 1997)). But the Denial Letter was issued by EPA as its final decision in the administrative proceeding below, and thus constitutes part of that proceeding. It therefore provides the proper focal point for this Court's review. *See Landmark Legal Found. v. IRS*, 97 Civ. 1474, 1998 WL 762353 (D.D.C. Sept. 22, 1998) (basing review of fee waiver denial on administrative appeal decision issued after initiation of litigation). More broadly, there is no general rule barring an agency from completing an administrative record following the initiation (continued...)

grant a fee waiver principally on the ground that NRDC had failed to explain how its FOIA request would significantly contribute to public understanding of the basis for EPA's decision-making regarding EBDC use on potatoes, beyond the information already publicly available. *See id.* at 5-9. In order to understand the grounds for EPA's conclusion, it is necessary to review the pertinent history of EPA's regulation of EBDCs and their use on potatoes, as recited in the Denial Letter, *see id.* at 1-4.

       *1.*     *Background for EPA's Fee Waiver Denial*

      As explained in greater detail in the Denial Letter, EBDCs are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ("FIFRA"),which requires a pesticide to be "registered" (and subsequently "reregistered") with EPA in order to be distributed or sold in the United States. *Id.* at 2. Under FIFRA, EPA registers a pesticide only after conducting an extensive scientific review of the risks and, when appropriate, the benefits of the pesticide to determine whether the pesticide causes "unreasonable adverse effects" to human health or the environment. *Id.* If the pesticide is determined to have such effects, EPA may not register the pesticide and any existing registration for the pesticide is subject to cancellation. *Id.*

      EBDC pesticides were first registered in the United States in 1948. *Id.* In 1987, they were placed under special review based on concerns over potential carcinogenic effects. *Id.* In 1992, EPA issued a "Notice of Intent to Cancel and Conclusion of Special Review" (hereinafter, the "NOIC"), which, among other things, restricted the use of EBDCs on potatoes. *Id.* at 3. Specifically, the NOIC required a 14-day "pre-harvest interval" ("PHI") for EBDC use on

---

of litigation. Indeed, a court can specifically require an agency to do so where appropriate. *Cf. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (""[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . . . . is to remand to the agency for additional investigation or explanation.""").

potatoes (*i.e.*, a 14-day interval between the last application of the pesticide and the harvest of

the crop), as it was believed that a "(0)-day pre-harvest interval" could result in unacceptable

dietary risks. *Id.* at 2-3. At the same time, EPA allowed a shorter, 3-day PHI for EBDC use in

nine potato-producing states in which "late blight" was known to affect potato crops, based on

EPA's finding that the benefits of EBDCs in combating late blight outweighed the competing

health risks. *Id.* at 3. In 1996, EPA similarly approved a 3-day PHI in four additional potato-

producing states, based on substantial late blight occurrence in these states as well. *See id.*; *see*

*also* 61 Fed. Reg. 42,244 (Aug. 14, 1996).

In 2003, as part of the periodic reregistration process for EBDCs, an EBDC industry task

force (the "Task Force") requested that EPA approve a 3-day PHI for EBDC use on potatoes

nationwide, in order to address continuing problems with late blight. Denial Letter at 3. EPA

did not act on the request until completing the reregistration process, which required preparation

of Reregistration Eligibility Decisions ("REDs") for each of the three EBDC pesticides for which

reregistration was sought, following opportunity for public comment. *Id.* These lengthy

documents, which comprehensively assess the health risks and mitigation options associated with

each EBDC pesticide, were released in the fall of 2005. *Id.* Subsequently, EPA considered the

Task Force's request to modify the PHI for EBDC use on potatoes and determined that it

warranted an opportunity for a hearing. *Id.* at 4.

A notice of hearing in connection with the Task Force's request was issued on July 11,

2007, which describes in detail EPA's basis for granting the hearing. *See id.* (citing Notice of

Hearing on Request to Reduce Pre-Harvest Interval for EBDC Fungicides on Potatoes, 72 Fed.

Reg. 37,771 (Jul. 11, 2007) (hereinafter "Hearing Notice")). As explained in the Hearing Notice,

when a pesticide registrant asks EPA to modify a restriction on the use of a pesticide imposed by

an existing cancellation order that was issued after opportunity for a hearing, EPA regulations

require the EPA Administrator to grant a hearing on the modification request if the applicant

presents substantial new evidence, unavailable when the restriction was first imposed, that "may

materially affect" the original basis for the restriction.  72 Fed. Reg. at 37,774 (citing 40 C.F.R.

§ 164.131(a)).  The Hearing Notice summarizes the evidence presented by the Task Force in this

regard:

- *Spread of Late Blight*.  The Task Force presented evidence that late blight was a continuing and growing problem for the nation's potato crop.  72 Fed. Reg. at 37,775. As discussed, at the time the 14-day PHI for EBDC use on potatoes was established by the 1992 NOIC, EPA allowed a 3-day PHI for nine states due to the threat of late blight; and it expanded this exemption to four more states affected by late blight in 1996.  *Id.*  By 2003, EPA had granted 18 emergency exemptions for the use of products to control late blight in 23 states due to the further spread of the disease, caused by an increase in its resistance over time to non-EBDC pesticides.  *Id.*  EPA stressed in the Hearing Notice the seriousness of the threat posed by late blight to the nation's potato crop: "Late blight is a fungal disease that caused the infamous 'Irish Potato Famine' in the 1840s.  If not adequately controlled, this disease is capable of totally destroying the crop in the field . . . and/or in storage . . . ."  *Id.* at 37,772.

- *Field Trial Data.*  The Task Force presented data from field studies conducted since the issuance of the NOIC showing that the concentration of pesticide residues on potatoes resulting from a 3-day PHI were not significantly greater than those resulting from a 14-day PHI, and that both levels of concentration were insignificant.  *Id.* at 37,775-76.

- *Revision of Cancer Risk Calculation.*  The Task Force noted that, in 1995, EPA recalculated and lowered its upper bound estimate of the increased cancer risk associated with lifetime exposure to EBDC residue.  In the REDs that EPA issued for EBDCs in 2005, the agency found that, using these lower estimates, EBDCs did not exceed the applicable level of concern for cancer risk.  *Id.* at 37,777.

Based on all of the above, the Administrator determined that the Task Force was entitled

to a hearing on its request to modify the 1992 NOIC.  *Id.* at 37,777-78.[4]  Importantly, as noted in

---

[4] Subsequent to the Hearing Notice, EPA issued an amended notice clarifying that, due to amendments made to the FIFRA since the issuance of the 1992 NOIC, the spread of late blight (continued…)

the Hearing Notice, the granting of a hearing does not imply that EPA has finally decided to make the requested modification. *Id.* at 37,774. "Rather, a decision to initiate a hearing means only that the Administrator has determined that the evidence submitted, if substantiated on the record in the hearing, may 'materially affect' the evidentiary rationale upon which the prior order was based." *Id.* Only at the end of the hearing process – in which NRDC is participating as a party and will have the opportunity to contest the evidence submitted by the Task Force – will EPA make a final decision on the Task Force's request. *Id.*

EPA has established a publicly available docket for the hearing, which is available on the Internet. Denial Letter at 4 (providing citations). The hearing docket includes numerous materials related to the hearing, such as the lengthy REDs for the EBDC pesticides at issue. *Id.* There are similar on-line dockets available for the REDs themselves and the preliminary assessments which preceded them, which also contain extensive studies, agency memoranda, public comments, and other documentation related to the health and safety of EBDCs. *Id.* at 3-4 (providing citations).

   2.   *Reasons for EPA's Fee Waiver Denial*

Against this backdrop, EPA denied NRDC's fee waiver request for essentially two reasons.

First, EPA rejected NRDC's contention that disclosure of the documents sought by NRDC would significantly contribute to public understanding of the issues identified in NRDC's fee waiver request, in light of "the vast amount of information already available in the public

---

will not be considered as part of the hearing on the Task Force's request. Instead, the request will be evaluated based on a risk-only standard requiring there to be a "reasonable certainty that no harm will result from aggregate exposure to [a pesticide's] chemical residue" – regardless of any benefits from the pesticide. *See* 72 Fed. Reg. 70,586, 70,589 (Dec. 12, 2007).

domain," as detailed above. *Id.* at 6. In particular, EPA rejected NRDC's claim that its FOIA

request would shed significant light on why the agency had agreed to grant a hearing on the Task

Force's request to modify the 1992 NOIC to allow a nationwide 3-day PHI for EBDC use on

potatoes. *Id.* at 7-8. Given that the agency's reasoning on the matter had already been detailed

in publicly available documents – most pointedly, in the Hearing Notice analyzing the

"substantial new evidence" proffered by the Task Force – EPA found that NRDC had failed to

show how its FOIA request was likely to contribute significant additional information on the

matter. *Id.* at 8. As stated in the Denial Letter:

> NRDC does not address the administrative process that has taken place, the
> available docket, or the explanations provided to the public in the Federal
> Register notice. Instead, NRDC simply argues that non-public information will
> substantially increase public knowledge about the basis of EPA's decision to
> allow the hearing process to move forward. . . . NRDC appears to suggest that a
> fee waiver must be granted any time a request asks for nonpublic information
> concerning the basis for an agency's decision – even though the basis for the
> agency's decision has been fully explained on the public record, and the requester
> has put forward no reason to believe that this public explanation was presented in
> bad faith.

*Id.* at 8.[5]

Second, EPA further found a fee waiver to be inappropriate based on the fact that "the

scope of [NRDC's] FOIA request extends far beyond the justification proffered for [its] fee

waiver request." *Id.* As EPA explained, NRDC justified its fee waiver request on the basis that

the documents it was seeking would significantly enhance public understanding of EPA's

---

[5] EPA also noted that NRDC is a party to the upcoming administrative hearing on the PHI for
EBDC use on potatoes, and that the hearing process includes the opportunity for discovery. *Id.*
at 7 (citing 40 C.F.R. § 164.50-164.51). Hence, EPA reasoned, "even assuming that there is
additional information relevant to the change in PHI on potatoes that is not currently available to
the public (and NRDC has given no reason to believe that there is), such information could be
obtained by NRDC (and made available to the public) through the administrative hearing
process." *Id.*

decision to grant a hearing on the Task Force's request to modify the 1992 NOIC. *Id.* Yet, NRDC's request is not limited to documents concerning the granting of the hearing; nor is it even limited to documents concerning the allowable PHI for EBDC use on potatoes. *Id.* at 8-9. Instead, as EPA emphasized, "NRDC has requested *any* documents 'reflecting or relating to' *any* contacts with *any* 'outside entities or individuals' that *in any way* concern EBDCs or pesticides containing EBDC, *from August 18, 2003 to the present*." *Id.* at 9 (emphasis in original). EPA explained that this broadly worded request "would encompass potentially thousands of documents, many of a routine nature, that have nothing to do with EPA's decision-making in the administrative proceeding at issue." *Id.* For example, EPA regularly has correspondence with EBDC producers concerning such matters as warranty disclosure statements, directions for use, marketing materials, product formulation, and manufacturing data – all of which have "little or no bearing on the public health issues that NRDC identifies as the basis for its fee waiver request." *Id.* at 6.

**ARGUMENT**

**EPA'S FEE WAIVER DENIAL SHOULD BE UPHELD**

**A.    Summary Judgment Standard and Standard of Review**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law."

Judicial review of an agency's denial of a fee waiver request under FOIA is de novo, but is limited to the record before the agency. *Carney*, 19 F.3d at 814. Hence, whether a FOIA requester is entitled to a fee waiver is a question of law appropriately resolved on a summary judgment motion. *See id.*

-10-

**B.    EPA Correctly Denied a Fee Waiver Based on NRDC's Failure to Show How the Documents Sought Are Likely to Contribute Significantly to Public Understanding of EPA's Decision-Making on EBDC Use on Potatoes**

EPA was correct to deny NRDC's fee waiver request on the ground that the documents sought are not "likely to contribute significantly" to public understanding of governmental operations or activities.  Although NRDC argued below that the documents will contribute significantly to public understanding of why "EPA is proposing to reverse a long-standing safety determination restricting the use and application of EBDC fungicides on potatoes nationwide, in response to a request from the chemical companies that manufacture EBDCs," Turner Decl., Ex. C at 4, NRDC completely failed to grapple with EPA's comprehensive explanation of its action on the public record.  NRDC thus failed to show how its FOIA request would contribute significant information on the subject beyond that available to the public already.  *See* 40 C.F.R. § 2.107(*l*)(2)(iii) (for disclosure to contribute "significantly" to public understanding, "[t]he public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent").

A similar fact pattern is found in *VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55 (D.D.C. 2002), in which the court upheld the agency's denial of a fee waiver.  The plaintiff in *VoteHemp* (a public-interest organization) sought from the Drug Enforcement Agency ("DEA") all documents relating to the regulation of industrial hemp, including correspondence and contacts with outside entities.  *Id.* at 57.  In particular, plaintiff was concerned with documents pertaining to DEA's recent promulgation of an interpretive rule designating all products containing THC (including hemp) as controlled substances.  *Id.* at 58.  Plaintiff argued that a fee waiver request should be granted on the ground that disclosure of the documents would contribute significantly

-11-

to public understanding of the "reasons underlying DEA's actions with respect to industrial hemp." *Id.* at 60.

The *VoteHemp* court rejected this argument. Given that DEA had "unambiguously and thoroughly articulated the reason underlying the adoption of the Interpretive Rule in the rule itself," the court found that the plaintiff had not adequately explained how the documents sought would significantly increase public understanding of the reasoning behind the agency's action. *Id.* Although plaintiff characterized the DEA's asserted reasoning as disingenuous and claimed a public interest in uncovering "'the true concerns of the DEA in its efforts to outlaw industrial hemp oil and seed products,'" *id.* at 63, the court rebuffed these contentions as "nothing more than rank speculation," as it found "no evidence in the record that supports plaintiff's allegations that the DEA has some ulterior motive behind the issuance of the Interpretive Rule that the public should be privy to." *Id.* at 61.

The same reasoning applies with equal force here. As in *VoteHemp*, the basis for the EPA decision at the center of NRDC's fee waiver request is "unambiguously and thoroughly articulated" in the decision itself. The Hearing Notice fully explains the evidence submitted by the Task Force in favor of modifying the 1992 NOIC and why the agency determined the evidence was sufficient to warrant a hearing on the issue. Moreover, like the plaintiff in *VoteHemp*, NRDC failed below to offer any substantial reason to suspect that ulterior motives are afoot. NRDC did not identify any flaws or misrepresentations in the specific reasons given by EPA for its decision; indeed, NRDC neglected even to *acknowledge* the reasons asserted by EPA for its decision. Instead, NRDC attempted to characterize the agency's action as an inexplicable "proposed reversal" of longstanding policy – a characterization that EPA correctly rejected as misleading in the Denial Letter. *See* Denial Letter at 7. As EPA explained therein,

-12-

even when the NOIC was issued in 1992, EPA allowed a 3-day PHI for EBDC use on potatoes in nine states affected by late blight; and such exemptions have increased over time as the disease has spread. *Id.* EPA now has merely decided to grant a hearing on whether this policy trend should be *extended* (rather than "reversed") by allowing a 3-day PHI nationwide, based on the continuing spread of late blight and other substantial new evidence submitted by the Task Force. *Id.* at 8.

Thus, as in *VoteHemp*, there is no reason to believe that NRDC's FOIA request is likely to significantly increase public understanding of EPA's decision-making on the issue. NRDC's suggestion that the mere fact that EPA has agreed to consider modifying an existing restriction in response to a request by industry raises suspicions of improper influence is unsupported and contrary to law. Indeed, "a presumption of regularity attaches to the actions of Government agencies." *USPS v. Gregory*, 534 U.S. 1, 10 (2001). NRDC was required instead to offer some "reasonably specific" basis in support of its suspicions. *See McClellan*, 835 F.2d at 1285. It did not do so, and hence there is no justification to require the public to pay for the costs of responding to NRDC's FOIA request. *See D.C. Tech. Assistance Org., Inc. v. HUD*, 85 F. Supp. 2d 46, 49 (D.D.C. 2000) ("Although plaintiffs assert that the public at large would benefit from the information they seek, they have failed to make a colorable showing that their claim of HUD's bad faith . . . has any basis in reality . . . ."); *AFGE v. U.S. Dep't of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986) ("Society undoubtedly has an interest in discovering and subjecting unlawful agency action to public scrutiny, but the [plaintiff's] allegations of

malfeasance here are too ephemeral at the moment to warrant such a search at public expense without further reason to suppose that the corruption suspected will be found.").[6]

The cases cited by NRDC granting fee waivers for FOIA requests "seeking agency contacts with outside parties," *see* Pl.'s Br. at 10, are distinguishable.  In *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003), the requester had a specific basis to suspect improper outside influence on the agency.  The FOIA request concerned documents relating to IRS' award of a government contract to a company that the sitting IRS Commissioner had co-founded and in which he held stock, *id.* at 1310-11; and there were media reports stating that the Commissioner had received a conflict-of-interest waiver for the project executed by his deputy, *id.* at 1314-1315.  There are no indicia of malfeasance remotely similar here.  In *Forest Guardians v. Dep't of Interior*, 416 F.3d 1173 (10th Cir. 2005), the FOIA request at issue concerned a government program about which little was known besides its "existence," and the documents sought were likely to reveal much about its scope and operation.  *Id.* at 1180-81.  There was no detailed information relevant to the program already in the public domain, comparable to the detailed information about EPA's decision-making on EBDC use on potatoes available to the public here.[7]  Finally, in *Citizens for Responsibility & Ethics in Washington v. HHS*, 481 F. Supp. 2d 99

---

[6] In the same vein, NRDC's attempt to find significance in the fact that EPA has filed joint motions with industry in the ongoing administrative proceedings concerning the Task Force's request, *see* Pl.'s Br. at 13, is baseless.  A review of the referenced submissions reveals that they concern simply a procedural dispute over what issues are properly relevant to the hearing under EPA regulations.  *See* Colangelo Decl., Ex. D, Apps. E-H; *see also* 72 Fed. Reg. 70,586 (Dec. 12, 2007) (amended hearing notice addressing the issue).  The fact that EPA and industry briefed the dispute jointly shows nothing except that their views were aligned on the matter.  Again, the fact that an agency agrees with a regulated entity on a subject is not by itself suggestive of improper influence.

[7] *Cf. also Cmty. Legal Servs. v. HUD*, 405 F. Supp. 2d 553, 559 (E.D. Pa. 2005) (cited in Pf.'s Br. at 14-15) (although ""some aspects"" of program had been publicized, requester claimed that (continued…)

(D.D.C. 2006) [hereinafter "*CREW*"], the plaintiff's FOIA request concerned potentially

improper agency relationships with public affairs firms, which had been subject to media

coverage showing that plaintiff's suspicions were not based on "rank speculation." *Id.* at 109.

The court in *CREW* specifically distinguished *VoteHemp*, on the ground that in *VoteHemp* there

was "a publicly available document explaining in detail the reasoning" for the agency's policy,

whereas there was "no comparable report specifically addressing what CREW seeks to

discover." *Id.* at 117.

This case is much closer to *VoteHemp* than to any of these cases.  There are no media

reports here raising concrete concerns about improper influence by EBDC manufacturers on

EPA's decision to consider modifying existing restrictions governing EBDC use on potatoes.

And there is ample documentation already publicly available that specifically addresses the

reasons why the agency believes this decision is justified.  This Court should therefore follow

*VoteHemp* and uphold the agency's denial of NRDC's fee waiver request, on the ground that

NRDC has failed to show that the documents it seeks are likely to add to public understanding of

the decision at issue.

**C.    EPA Correctly Denied a Fee Waiver on the Ground That NRDC's FOIA Request Is Not Limited to Documents Concerning EPA's Decision-Making on EBDC Use on Potatoes**

Even assuming *arguendo* that there is some reason to believe that the documents sought

in NRDC's FOIA request would shed significant new light on EPA's decision to consider

modifying existing restrictions governing EBDC use on potatoes, there remains the problem that

the FOIA request is not reasonably tailored to this putative fee waiver justification.  Where a

_____

timely, detailed information about program at issue was unavailable, and agency did not argue
otherwise).

FOIA requester seeks a fee waiver, "[t]he information requested should not exceed the purpose for which it is to be used." *Van Fripp v. Parks*, 97 Civ. 159, 2000 U.S. Dist. LEXIS 20158, at *17 (D.D.C. Mar. 16, 2000). Yet, here, the scope of NRDC's FOIA request far exceeds NRDC's avowed purpose of discovering the basis for EPA's recent decision concerning EBDC use on potatoes. As emphasized in EPA's Denial Letter, NRDC's FOIA request is hardly limited to documents relating to this decision. Rather, it encompasses all documents reflecting EPA's communications with outside entities since August 2003 concerning EBDCs *in any way* – a vastly overbroad request that would require the agency to search for and process thousands of irrelevant documents.

NRDC attempts to anticipate this argument by citing case law holding that the mere fact that a FOIA request encompasses "routine" or "administrative" material is insufficient to deny a fee waiver. *See* Pl.'s Br. at 16. But NRDC misses the point. The problem with NRDC's request is not simply that it encompasses "routine" or "administrative" material; rather, it is that the request on its face is not limited to documents concerning the allowable PHI for EBDC use on potatoes, even though it is EPA's alleged "reversal" on this issue that provides the basis for NRDC's fee waiver request. The Denial Letter noted the fact that NRDC's request would encompass thousands of routine, administrative documents simply to emphasize that the agency has many communications with EBDC registrants that have nothing to do with EPA decision-making on the PHI allowable for EBDC use on potatoes. It is the overreaching scope of the request, not the routine or administrative nature of the responsive documents, that makes a public-interest waiver inappropriate here. *See Van Fripp*, 2000 U.S. Dist. LEXIS 20158, at *21 ("[T]he plaintiff's request for such a large number of documents counsels the court against sanctioning what may amount to a proverbial quest for a needle in a haystack.").

While NRDC may argue that it seeks to investigate the possibility of improper industry influence on EPA's regulation of EBDCs generally, rather than simply EBDC use on potatoes, NRDC has no entitlement to conduct such a broad-ranging investigation at public expense. Again, the premise for its fee waiver request is that EPA's alleged "reversal" on the potato-PHI issue raises a suspicion that improper influence played a role in that decision. EPA strongly disputes this premise; but even on its face it merely goes to whether a fee waiver should be granted as to documents pertaining to that decision. In no event is there any justification to require the agency to bear the costs of collecting, processing, and copying documents pertaining to every *other* aspect of EPA's regulation of EBDCs. Indeed, were it otherwise, NRDC could submit a FOIA request seeking EPA's communications with external entities *on any topic* and argue for a fee waiver on the ground that it seeks to uncover any improper industry influence on EPA's operations *as a whole*. NRDC would have no more justification to obtain a fee waiver for such a request as it has for the overbroad request submitted here. *Cf. McClellan*, 835 F.2d at 1285 (rejecting fee waiver request premised on conclusory interest in ensuring agency compliance with federal law, given the absurd logical implications of the premise: "In the extreme case a wide-ranging public interest group could demand fee waiver on a request for *all* U.S. government documents, on the basis that the information might be used . . . to ensure that agencies comply with federal law.").

**CONCLUSION**

For the reasons above, the Court should uphold EPA's fee waiver decision.  Accordingly,

NRDC's motion for partial summary judgment should be denied and EPA's cross-motion for

partial summary judgment should be granted.

Dated:  New York, New York                    MICHAEL J. GARCIA
        July 7, 2008                          United States Attorney for the
                                              Southern District of New York
                                              Attorney for Defendant


                                      By:  _____*/s/ Serrin Turner*_____
                                              SERRIN TURNER
                                              Assistant United States Attorney
                                              86 Chambers Street, 3rd Floor
                                              New York, New York 10007
                                              Telephone: (212) 637-2701
                                              Facsimile: (212) 637-2686
                                              Email: serrin.turner@usdoj.gov

-18-