MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant
SERRIN TURNER
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel. No. (212) 637-2701
Fax No. (212) 637-2686
Email: serrin.turner@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
NATURAL RESOURCES DEFENSE COUNCIL,   :
INC.                                  :
                                      :
                    Plaintiff,        :
                                      :
          v.                          :         08 Civ. 2443 (DLC)
                                      :
UNITED STATES ENVIRONMENTAL           :         ECF CASE
PROTECTION AGENCY,                    :
                                      :
                    Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DECLARATION OF SERRIN TURNER

I, Serrin Turner, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as

follows:

1.      I am an Assistant United States Attorney in the office of Michael J. Garcia,

United States Attorney for the Southern District of New York, attorney for defendant in this

action.  I am the attorney assigned to the defense of this matter.

2.      I submit this declaration in opposition to plaintiff's motion for partial summary

judgment and in support of defendant's cross-motion for partial summary judgment.

3.      Appended as Exhibit A hereto is a true and complete copy of a Freedom of

Information Act ("FOIA") request submitted by plaintiff Natural Resources Defense Council

("NRDC") to defendant, the Environmental Protection Agency ("EPA"), which was received by

the EPA on December 14, 2007.

4.      Appended as Exhibit B hereto is a true and complete copy of a letter from EPA to

NRDC dated December 28, 2007, denying NRDC's fee waiver with respect to the FOIA request.

5.      Appended as Exhibit C hereto is a true and complete copy of a letter from NRDC

to EPA dated January 25, 2008, administratively appealing the fee waiver denial.

6.      Appended as Exhibit D hereto is a true and complete copy of a letter from EPA to

NRDC dated April 25, 2008, denying the appeal.

Dated: July 7, 2008
       New York, New York

                              _____*/s/ Serrin Turner*_____
                              SERRIN TURNER





OPPTS

HQ-RIN-00484-08
Due: 01/15/08

NATURAL RESOURCES DEFENSE COUNCIL

December 13, 2007

VIA FAX AND CERTIFIED MAIL



Larry F. Gottesman
National FOIA Officer
U.S. Environmental Protection Agency
Records, FOIA and Privacy Branch
Mail Code 2822T
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
FAX: (202) 566-2147

Re:    FREEDOM OF INFORMATION ACT REQUEST REGARDING EBDC

Dear Mr. Gottesman,

On behalf of the Natural Resources Defense Council ("NRDC"), I write to request the disclosure
of records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the
pertinent Environmental Protection Agency ("EPA") regulations, 40 C.F.R. § 2.100, *et seq.*

## I.    Description of Records Sought

Please produce all records[1] reflecting or relating to any contacts, meetings, or communications
with pesticide registrants and other outside entities or individuals concerning ethylene
bisdithiocarbamate ("EBDC") and pesticide products containing EBDC (including, but not
limited to, mancozeb, maneb, and metiram) since August 18, 2003. This request includes, but is
not limited to, the following:

   a) All records reflecting or relating to any contacts, meetings, or communications with the
      following entities or individuals:

      1. the EBDC/ETU Task Force, its agents, or its attorneys;
      2. the National Potato Council, its agents, or its attorneys;

---

[1] The term "records" is used herein to mean anything denoted by the use of that word or its
singular form in the text of FOIA. In particular, the term includes, but is not limited to, all
writings (handwritten, typed, electronic, or otherwise produced, reproduced, or stored) including,
but not limited to, correspondence, minutes of meetings, memoranda, notes, e-mails, notices,
facsimiles, charts, tables, presentations, orders, and filings.

www.nrdc.org        1200 New York Avenue, NW, Suite 400                    NEW YORK · LOS ANGELES · SAN FRANCISCO
                    Washington, DC 20005
                    TEL 202 289-6868  FAX 202 289-1060

                    100% Postconsumer Recycled Paper

Other

    3. attorneys or other employees of the law firm of McDermott, Will, & Emery;

    4. Dow AgroSciences, its agents, or its attorneys;

    5. DuPont, its agents, or its attorneys;

    6. Griffin Corporation, its agents, or its attorneys;

    7. Cerexagri, its agents, or its attorneys; and/or

    8. BASF, its agents, or its attorneys.

b) All records reflecting or relating to any contacts, meetings, or communications with outside entities or individuals concerning the matter of Request to Reduce Pre-Harvest Interval (PHI) for EBDC Fungicides on Potatoes, EPA-HQ-OPP-2007-0181.

Individuals likely to have records responsive to this request include: Debra Edwards, Special Review and Registration Division, Office of Pesticide Programs; Steven Bradbury, Special Review and Registration Division, Office of Pesticide Programs; Peter Caulkins, Special Review and Registration Division, Office of Pesticide Programs; Kevin Costello, Special Review and Registration Division, Office of Pesticide Programs; Michelle Knorr, Office of General Counsel; Erin Koch, Office of General Counsel; Brenda Mallory, Office of General Counsel; Robert Perlis, Office of General Counsel; and Kevin Minoli, Office of General Counsel. These individuals, among others, may possess records responsive to this request.

## II.    Request for a Fee Waiver

NRDC requests that EPA waive the fee that it would otherwise charge for search and production of the records described above. FOIA dictates that requested records be provided without charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). The requested disclosure would meet both of these requirements. In addition, NRDC qualifies as a "representative of the news media" entitled to a reduction of fees under the FOIA. 5 U.S.C. § 552(a)(4)(A)(ii)(II); 40 C.F.R. § 2.107(c)(1)(iii).

### A.    First Requirement

The disclosure requested here would be "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Specifically, the requested disclosure would satisfy the four elements identified at 40 C.F.R. § 2.107(*l*)(2).

The records described in Section I above shed light on the breadth and variety of EPA discussions of EBDC, a pesticide of widespread public health concern, and EBDC's metabolite, ethylenethiourea ("ETU"), with pesticide registrants and other outside entities and individuals. *See, e.g.*, EPA, *Reregistration Eligibility Decision for Mancozeb* (Sept. 2005) (attached as Exhibit A) (*also available at* http://www.epa.gov/oppsrrd1/REDs/ mancozeb_red.pdf); Paul Houeto, et al., *Ethylenebisdithiocarbamates and Ethylenethiourea: Possible Human Health Hazards*, 103 Envtl. Health Perspectives 568 (June 1995) (attached as Exhibit B) (*also available at* http://www.ehponline.org/realfiles/members/1995/103-6/houeto-full.html). The records thus

concern "the operations or activities of the government." 40 C.F.R. § 2.107(*l*)(2)(i). These
records will inform the public on the nature and extent of agency contacts, meetings, and
communications with pesticide registrants and other outside entities and individuals regarding
EBDC risk, contamination, public health threats, and appropriate regulatory responses. The
tailored requests in this letter are designed to seek important materials that will contribute
meaningfully and significantly to public understanding of the legal basis, policy justifications,
and public health implications of governmental agency risk assessments and potential regulatory
action or inaction, and thus are likely to contribute significantly to the public's understanding of
those activities, *id.* § 2.107(*l*)(2)(ii), (iv). Disclosure of these records will also "contribute to the
understanding of a reasonably broad audience of persons interested in the subject," 40 C.F.R.
§ 2.107(*l*)(2)(iii), because NRDC will disseminate summary and analysis of any newsworthy
information conveyed in the requested records.

NRDC has a proven ability to digest and disseminate such information quickly and effectively.
In addition to its website (www.nrdc.org) (homepage at Attachment 1), which is updated daily
and draws approximately 2.7 million page views and 800,000 visits per month, NRDC has
numerous other means to widely disseminate information to the public including numerous and
varied publications, educational programs, media initiatives, and public interest litigation.

For example, NRDC publishes a magazine, *OnEarth*, on environmental and public health
subjects of current interest, which is read by approximately 450,000 individuals through
subscriptions, sales at newsstands and bookstores, and access free of charge at
http://www.nrdc.org/onearth (sample issue at Attachment 2). Similarly, NRDC publishes and
distributes *Nature's Voice*, a newsletter with information regarding current environmental
matters, five times a year to approximately 420,000 members nationwide and online at
http://www.nrdc.org/naturesvoice/default.asp (sample issue at Attachment 3), as well as other
newsletters and alerts. NRDC's *Earth Action* email list has more than 145,000 subscribers who
receive biweekly information on urgent environmental issues (sample email at Attachment 4).
This information is also made available through NRDC's online Action Center at
http://www.nrdc.org/action/default.asp (Attachment 5). NRDC sends its *Legislative Watch*
bulletin to more than 35,000 people biweekly during Congressional sessions (sample email
bulletin at Attachment 6) and publishes the bulletin online at
http://www.nrdc.org/legislation/legwatch.asp (Attachment 7). *This Green Life* is an electronic
newsletter on environmentally sustainable living distributed by email to more than 60,000
subscribers (sample email at Attachment 8) and made available online at
http://www.nrdc.org/thisgreenlife/default.asp (Attachment 9). NRDC issues press releases,
participates in press conferences and interviews with reporters and editorial writers, and has over
twenty staff members dedicated to communications work, *see* "Communications" staff list at
http://www.nrdc.org/about/staff.asp (Attachment 10). Finally, NRDC employees provide
Congressional testimony, appear on television, radio and web broadcasts and at conferences, and
contribute to numerous national newspapers, magazines, academic journals, other periodicals,
and books. *See, e.g.,* Attachments 11 (testimony of Gina M. Solomon, M.D., M.P.H., NRDC
Senior Scientist, before United States Senate Committee on Environment and Public Works, Feb.
6, 2007), 12 (transcript, "Climate Change: Experts gauge fallout from G8 nations' nonbinding
decision on global warming, E&ETV, *On Point*, July 12, 2005 (featuring NRDC Climate Center
Deputy Director Dan Lashof)), 13 (transcript, "Protest Raised over New Tests of Naval Sonar,"

National Public Radio, *All Things Considered*, July 24, 2007 (featuring NRDC Marine Mammal Project Director Joel Reynolds)), 14 (conference panel outline, "Enforcement of Environmental Laws: Equalizing Effect on Compliance Efforts?," 2007 Environmental Law Conference at Yosemite, Oct. 19, 2007 (featuring NRDC Senior Attorney Michael E. Wall)), 15 (editorial, "California's cool(ing) opportunity," *San Francisco Chronicle*, Apr. 11. 2006 (co-authored by NRDC California Energy Program Director Devra Wang)), and 16 (publisher's notes to *Saving Energy, Growing Jobs: How Environmental Protection Promotes Economic Growth, Profitability, Innovation and Competition* (Bay Tree Publishing 2007), by NRDC Energy Program Director David B. Goldstein)); *see also* Attachments 17-37, discussed below.

NRDC routinely uses FOIA to obtain information from federal agencies that NRDC legal and scientific experts analyze in order to inform the public about a variety of issues including energy policy, climate change, wildlife protection, nuclear weapons, pesticides, drinking water safety, and air quality. Some specific examples are provided below:

(1)   NRDC obtained through a court-enforced FOIA request records of the operations of Bush Administration's Energy Task Force, headed by Vice President Dick Cheney. It made those records available, along with analysis of selected excerpts and links to the administration's index of withheld documents, on NRDC's website at http://www.nrdc.org/air/energy/taskforce/tfinx.asp (Attachment 17). NRDC's efforts helped to inform the public about an issue that, even before the records' release, had attracted considerable attention. *See, e.g.*, Elizabeth Shogren, "Bush Gets One-Two Punch on Energy," *L.A. Times* (Mar. 28, 2002), at A22 (Attachment 18); Bennett Roth, "Houston Energy-Drilling Firm Appears in Documents from Energy Department," *Houston Chronicle* (Apr. 12, 2002) (Attachment 19).

(2)   NRDC obtained through a FOIA request a memorandum by ExxonMobil advocating the replacement of a highly respected atmospheric scientist, Dr. Robert Watson, as the head of the Intergovernmental Panel on Climate Change. NRDC used this memorandum to help inform the public about what may have been behind the decision by the Bush Administration to replace Dr. Watson. *See* NRDC Press Release and attached Exxon memorandum, "Confidential Papers Show Exxon Hand in White House Move to Oust Top Scientist from International Global Warming Panel," (April 3, 2002) (Attachment 20); Elizabeth Shogren, "Charges Fly Over Science Panel Pick," *L.A. Times* (April 4, 2002), at A19 (Attachment 21).

(3)   NRDC incorporated information obtained through FOIA into a 2005 report, published and provided free of charge at NRDC's website, *see* http://www.nrdc.org/wildlife/marine/sound/contents.asp, on the impacts of military sonar and other industrial noise pollution on marine life. *See Sounding the Depths II: The Rising Toll of Sonar, Shipping and Industrial Ocean Noise on Marine Life*. See NRDC, *Sounding the Depths II* (Nov. 2005) (update to 1999 report) (Attachment 22). Since the report's publication, the sonar issue has continued to attract widespread public attention. *See, e.g.*, "Protest Raised over New Tests of Naval Sonar," National Public Radio, *All Things Considered*, July 24, 2007 (transcript at Attachment 13).

(4)    NRDC scientists have used information obtained through FOIA to publish analyses of the United States' and other nations' nuclear weapons programs. In 2004, for example, NRDC scientists incorporated information obtained through FOIA into a feature article on the United States' plans to deploy a ballistic missile system and the implications for global security. *See* Hans M. Kristensen, Matthew G. McKinzie, and Robert S. Norris, "The Protection Paradox," *Bulletin of Atomic Scientists* (March/April 2004) (Attachment 23).

(5)    NRDC has used White House documents obtained through FOIA to inform the public about EPA's failures to protect wildlife and workers from the pesticide atrazine in the face of industry pressure to keep atrazine on the market. *See* http://www.nrdc.org/health/pesticides/natrazine.asp (Attachment 24); *see also* William Souder, "It's Not Easy Being Green: Are Weed-Killers Turning Frogs Into Hermaphrodites?," *Harper's Bazaar* (Aug. 1, 2006) (referencing documents obtained and posted online by NRDC) (Attachment 25).

(6)    NRDC has obtained through FOIA information on the levels of arsenic in drinking water supplies across the country. NRDC incorporated much of the information into a report, *Arsenic and Old Laws* (2000), printed and made available online through NRDC's website, *see* http://www.nrdc.org/water/drinking/arsenic/aolinx.asp (Attachment 26), and provided analysis describing its significance and guiding interested members of the public on how to learn more about arsenic in their own drinking water supplies. *Id.*; *see also* Steve LaRue, "EPA Aims to Cut Levels of Arsenic in Well Water," *San Diego Union-Tribune* (June 5, 2000) at B1 (referencing NRDC report) (Attachment 27).

(7)    In 2000, NRDC used information obtained through FOIA to publish a report analyzing the impacts of manure pollution from large livestock feedlots on human health, fish and wildlife. *See* NRDC, *Spills & Kills* (Aug. 2000) (Attachment 28).

(8)    In 1999, NRDC obtained through FOIA a Defense Department document, *History of the Custody and Deployment of Nuclear Weapons: July 1945 through September 1977*. The document attracted significant press attention once it was disclosed. *See, e.g.*, Walter Pincus, "Study Says U.S. Secretly Placed Bombs; Cold War Deployments Affected Mostly Allies," *Washington Post* (Oct. 20, 1999) at A3 (Attachment 29). One of NRDC's nuclear scientists, Robert Norris, published a detailed analysis of this document explaining its significance to the public. Robert S. Norris, William M. Arkin, and William Burr, "Where They Were," *Bulletin of Atomic Scientists* (Nov/Dec 1999) (Attachment 30).

(9)    In 1996, NRDC obtained through FOIA test results regarding lead levels in the District of Columbia's drinking water supplies. NRDC made the test results public along with analysis explaining the significance of the results. *See* D'Vera Cohn, "Tap Water Safeguards Still Stalled; City Failed to Tell Some Residents of Excess Lead Contamination," *Washington Post* (Apr. 18, 1996) at J1 (Attachment 31).

(10)    In 1989, NRDC obtained through FOIA testimony, previously suppressed by the first Bush administration, by federal experts who opposed oil drilling off the coasts of California and Florida. *See* Larry Liebert, "Oil Testimony Reportedly Quashed; Environmentalists say Federal Experts Pressured by Bush," *Orange County Register* (Oct. 5, 1989) at A6 (Attachment 32).

(11)    In 1988, NRDC obtained through FOIA a report by the U.S. Fish and Wildlife Service that declared that the government's review of offshore oil drilling in Northern California was incomplete and overly optimistic. Reagan Administration officials had tried to keep the report secret and then repudiated it upon its release. *See* Eric Lichtblau, "Federal Report Blasts Offshore Oil Studies," *L.A. Times* (June 4, 1988) at A32 (Attachment 33).

(12)    In 1982, NRDC obtained through a FOIA request an EPA memorandum stating that most air pollution monitors have repeatedly underestimated levels of toxic lead in the air. NRDC used the memorandum to inform the public about the consequences of EPA's proposal to relax restrictions on lead in gasoline. *See* Sandra Sugawara, "Lead in Air is Undermeasured, EPA Section Chief's Memo Says," *Washington Post* (July 11, 1982) at A6 (Attachment 34).

Disclosure of the requested documents is "likely to contribute significantly to public understanding" of EPA's activities concerning EBDC, 5 U.S.C. § 552(a)(4)(iii), because NRDC intends to disseminate any newsworthy information in the released records, and its analysis of such records, to its member base and to the broader public, through one or more of the many communications channels referenced above. As NRDC's long history of incorporating information obtained through FOIA into reports, articles and other communications illustrates, NRDC is well prepared to convey to the public any relevant information it obtains through this records request.[2]

## B.    Second Requirement

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request because NRDC does not have any commercial interest that would be furthered by the requested disclosure. 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). NRDC is a not-for-profit organization and, as such, has no commercial interest. 40 C.F.R. § 2.107(*l*)(3)(i). "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citation omitted). NRDC's interest in obtaining the requested materials is to serve the public interest by disclosing presently non-public information about the nature and extent of EPA contacts,

---

[2] For example, information NRDC obtained through FOIA requests resulted in the following articles, in addition to those referenced above: Felicity Barringer, "Science Panel Issues Report on Exposure to Pollutant," *New York Times* (Jan. 11, 2005) (Attachment 35); Katharine Q. Seelye, "Draft of Air Rule is Said to Exempt Many Old Plants," *New York Times* (Aug. 22, 2003) (Attachment 36); Don Van Natta, Jr., "E-Mail Suggests Energy Official Encouraged Lobbyist on Policy," *New York Times* (Apr. 27, 2002) (Attachment 37).

6

meetings, and communications with pesticide registrants and other outside entities and
individuals regarding EBDC risk, contamination, public health threats, and appropriate
regulatory responses, as described above.

As discussed below, NRDC is also a representative of the media seeking information in the
public interest.

### C.    NRDC Is a Media Requester

Even if EPA denies a public interest waiver of all costs and fees, NRDC is a representative of the
news media entitled to a reduction of fees under the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and
EPA's FOIA regulations, 40 C.F.R. § 2.107(c)(1)(iii), (l). *See generally Elec. Privacy Info. Ctr.
v. United States Dep't of Def.*, 241 F. Supp. 2d 5, 11-14 (D.D.C. 2003) (a "non-profit public
interest organization" qualifies as a representative of the news media under FOIA where it
publishes books and newsletters on issues of current interest to the public). As described earlier
in this request, NRDC publishes a quarterly magazine, *OnEarth*, which has approximately
450,000 readers and is available at newsstands and bookstores; publishes a periodic newsletter
for its more than 420,000 members nationally; issues regular electronic newsletters, action alerts,
public reports and analyses; and maintains a free online library of reports and analyses. These
publications routinely include information about current events of interest to the readership and
the public. NRDC staff members are also regular contributors to numerous periodicals and
books; television, radio, and web programs; and hearings and conferences. As previously noted,
information obtained as a result of this request will, if appropriately newsworthy, be
disseminated through one or more of NRDC's publications or other suitable channels.

### III.    Willingness to Pay Fees Under Protest

Please provide the records above irrespective of the status and outcome of your evaluation of
NRDC's fee category assertion and fee waiver request. In order to prevent delay in EPA's
provision of the requested records, NRDC states that it will, if necessary and under protest, pay
fees in accordance with 40 C.F.R. § 2.107(c)(1)(iv), (c)(2), and (d). Please consult with me,
however, before undertaking any action that would cause the fee to exceed five hundred dollars.
Such payment will not constitute any waiver of NRDC's right to seek administrative or judicial
review of any denial of its fee waiver request and/or rejection of its fee category assertion.

### IV.    Conclusion

I trust that, in responding to this request, EPA will comply with all relevant deadlines and other
obligations set forth in FOIA and EPA's regulations. *See, e.g.*, 40 C.F.R. § 2.014(a)-(d), (f).

Please produce the records above by sending them to me at the address appearing on the first
page of this letter. Please produce them on a rolling basis; at no point should EPA's search for—
or deliberations concerning—certain records delay the production of others that EPA has already
retrieved and elected to produce.

In the event EPA concludes that some of the records requested above may already be publicly available, I will be happy to discuss those conclusions in an effort to narrow the scope of this request. Please do not hesitate to call or email me with questions.

Thank you for your prompt attention to this request.

Sincerely,

Thomas Cmar
Attorney
Natural Resources Defense Council
(202) 289-2405
tcmar@nrdc.org

**Enclosures (sent via certified mail in hard copy and on CD-ROM):**

Exhibits A and B
Attachments 1 through 37



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

December 28, 2007

OFFICE OF
ENVIRONMENTAL INFORMATION

**BY EMAIL:  tcmar@nrdc**

Mr. Thomas Cmar
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC  20005

RE:  Request No. HQ-RIN-0484-08

Dear Mr. Cmar:

By letter dated December 13, 2007, you asked for a waiver of fees for your Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 request for a copy of specific information regarding ethylene bisdithiocarbamate (EBDC).

After reviewing the information you provided and consulting with the Office of Pesticide Programs (OPP), we have determined that you have not provided information to justify a fee waiver, and we are denying your fee waiver request.  Specifically, the material requested is not in the public interest because it is not likely to contribute significantly to public understanding of government operations or activities.

For your information, your request was placed in the "other" fee category, which entitles you to the first 100 pages of duplication and two hours of search time for the responsive records, and review time at no charge, in accordance with the Agency's regulations (40 CFR § 2.107).  The OPP will be responding to your information request and will notify you of the estimated cost to search and duplicate the responsive records prior to processing your request.

Under the FOIA, you have the right to appeal my fee waiver denial determination to EPA, Office of the Environmental Information, Records, FOIA and Privacy Branch (2822T), 1200 Pennsylvania Avenue, N.W., Washington, DC 20460.  The appeal must be

Mr. Thomas Cmar
December 28, 2007
Page 2

made in writing, and must be received at this address no later than 30 calendar days from the date of this letter. The Agency will not consider appeals received after the 30-day limit. The appeal must include as much of as little related information as you wish, as long as it clearly identifies the determination being appealed (including the assigned FOIA request number HQ-RIN-00484-08. For quickest possible handling, the appeal letter and its envelope should be marked "Freedom of Information Act Appeal."

    If you have any questions, please contact Linda Person of my staff at (202) 566-1661.

                                    Sincerely,

                                    Linda L. Person for
                                    Larry F. Gottesman
                                    National FOIA Officer

# FREEDOM OF INFORMATION ACT FEE WAIVER APPEAL
# HQ-APP-00040-08
# (ref. HQ-RIN-00484-08)

**APPELLANT:** Thomas Cmar

**COMPANY:** NRDC

**Appeal Date:** January 25, 2008

**Received Date:** January 25, 2008

**Subject:** Listed info regarding ethylene bisdithiocarbamate (EBDC)

**Due Date:** February 25, 2008

**ASSIGNMENTS:**
OGC

**SPECIAL INSTRUCTIONS:**
FEE WAIVER APPEAL
OGC = Action
OPPTS/OPP = FYI
(ref. HQ-RIN-00484-08)

FS: LP



NATURAL RESOURCES DEFENSE COUNCIL



January 25, 2008

VIA HAND DELIVERY

Larry F. Gottesman
U.S. Environmental Protection Agency
Office of Environmental Information
Records, FOIA and Privacy Branch
Mail Code 2822T
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
FAX:  (202) 566-2147

Re:    FREEDOM OF INFORMATION ACT APPEAL OF FEE WAIVER DENIAL ON
        REQUEST REGARDING EBDC, HQ-RIN-00484-08

Dear Mr. Gottesman,

On behalf of the Natural Resources Defense Council ("NRDC"), I write to appeal the United
States Environmental Protection Agency's ("EPA's") denial of a fee waiver on the above-
captioned NRDC request for documents under the Freedom of Information Act, 5 U.S.C. § 552
("FOIA").

I.    Background

On December 13, 2007, NRDC filed the above-captioned FOIA request with EPA, seeking all
records since August 18, 2003 reflecting or relating to any contacts, meetings, or
communications with pesticide registrants and other outside entities or individuals concerning
ethylene bisdithiocarbamate ("EBDC") and pesticide products containing EBDC (including, but
not limited to, mancozeb, maneb, and metiram).  *See* Appendix A.[1]  NRDC also requested a fee
waiver for search and production of the requested records, because disclosure of the information
is in the public interest.  *See id.*

By letter dated December 28, 2007, EPA denied NRDC's fee waiver request.  Appendix B.  The
purported reason for the denial was that "the material requested is not in the public interest
because it is not likely to contribute significantly to public understanding of government

---

[1] NRDC's December 13, 2007 FOIA request, and all of its attachments and exhibits, are attached
as Appendix A to this letter and hereby incorporated by reference.

www.nrdc.org    1200 New York Avenue, NW, Suite 400    NEW YORK · LOS ANGELES · SAN FRANCISCO
Washington, DC 20005
TEL 202 289-6868 FAX 202 289-1060

100% Postconsumer Recycled Paper

operations or activities." *Id.* The December 28 letter did not provide any additional explanation for the denial.

This appeal is timely, having been made within 30 days of NRDC's receipt of EPA's fee waiver denial.

## II.    Discussion

EPA's denial of NRDC's fee waiver request is unlawful. Consistent with FOIA's requirement for a fee waiver, the disclosure requested here would be "likely to contribute significantly to public understanding of the operations or activities of the government." *Id.* Courts have repeatedly held that "the public interest exception should be *viewed in an expansive manner.*" *Judicial Watch v. Dep't of Energy*, 310 F. Supp. 2d 271, 291 (D.D.C. 2004) (emphasis added); *see also Judicial Watch v. Rossotti*, 326 F. 3d 1309, 1315 (D.C. Cir. 2003). As outlined in NRDC's original request and discussed in even more detail below, NRDC satisfies all of the criteria for a fee waiver.

### A.    The subject matter of the records, in the context of this request, specifically concerns identifiable operations or activities of government.

As explained in our original FOIA request, the information sought involves EPA contacts, meetings, or communications with pesticide registrants and other outside entities or individuals concerning EBDC pesticides. The operations or activities of the government at issue include: EPA collection of data concerning whether pesticide products containing EBDC perform their intended function without unreasonable adverse effects on the environment, within the meaning of the Federal Insecticide Fungicide Rodenticide Act ("FIFRA"), 7 U.S.C. § 136a(c)(5)(C); EPA decisions, pursuant to FIFRA, regarding registration, reregistration, cancellation, and modification of cancellation of pesticide products containing EBDC; and EPA communications with outside parties regarding that collection of data and those decisions. In other words, the FOIA request seeks information about how EPA evaluates the safety of these pesticides, and how EPA relies on advice and information from outside entities to conduct this evaluation. Thus, the subject of the request plainly concerns "the operations or activities of the government." 40 C.F.R. § 2.107(*l*)(2)(i); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 107-08 (D.D.C. 2006) [hereinafter *CREW*]; *Judicial Watch v. Dep't of Transp.*, Civ. No. 02-566-SBC, 2005 WL 1606915, at *3-4 (D.D.C. July 7, 2005) [hereinafter *Judicial Watch*].

### B.    The records to be disclosed are "likely to contribute" to an understanding of specific government operations or activities.

NRDC is requesting only records that are not already publicly available. Since such records are not in the public domain, they are likely to be meaningfully informative about EPA's administration of FIFRA with respect to pesticide products containing EBDC. The public release of non-public government records will likely contribute to an understanding of the government activities and operations involved. Information about the process of EPA's

administration of FIFRA with respect to pesticide products containing EBDC is likely to contribute to the public's understanding of EPA operations and activities.

Importantly, a "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure." *Judicial Watch*, 2005 WL 1606915, at *4 (internal citations omitted). Any EPA predictions about which records will ultimately be released are therefore irrelevant. Moreover, as NRDC's request only seeks records reflecting or relating to any contacts, meetings, or communications with pesticide registrants and other outside entities or individuals, such documents are not likely to be exempt from disclosure in any event. *See, e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001) (communications to and from parties outside the government are not inter-agency or intra-agency documents and may not be withheld under FOIA Exemption 5).

C.  **The disclosure will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

For this requirement, the courts consider "the requestor's ability and intent to effectively convey the information to the public." *Judicial Watch*, 2005 WL 1606915, at *5; *see also CREW*, 481 F. Supp. 2d at 113-16. In the original FOIA request and its exhibits and attachments, NRDC has more than sufficiently demonstrated the requisite ability and intent.

NRDC has the expertise, ability, and commitment to effectively convey the requested information obtained to the public at large. *See* 40 C.F.R. §§ 2.107(*l*)(2)(iii), (iv). NRDC has longstanding expertise in pesticide regulation and public health issues, and has been involved in advocacy regarding the public health and environmental impacts of pesticides for many years. NRDC publishes multiple publications relating to pesticide and environmental issues that are delivered to hundreds of thousands of readers, as detailed more thoroughly in our original FOIA request. *See* Appendix A at 3, Attachments 1-10. Information obtained as a result of this request will be disseminated broadly to a large readership through one or more of these or other publications. As documented extensively in our initial request, NRDC has a long track record of widely disseminating information obtained through FOIA, through national and local news media, published reports, press statements, and otherwise. *See id.* at 3-6, Attachments 11-37.

To satisfy this requirement, NRDC need not "outline a specific plan in addition to describing its methods of publication." *Judicial Watch*, 2005 WL 1606915, at *5. To do so would amount to "pointless specificity." *Id.* (internal quotation omitted). Courts have granted fee waivers for requesters with far less robust distribution capabilities than NRDC in this case. *See, e.g., Center for Food Safety v. U.S. Dep't of Agriculture*, Civ. No. 04-1324 (RMU) (D.D.C. Feb. 7, 2005) (Memorandum Opinion overturning USDA's denial of fee waiver).

An audience of hundreds of thousands – reached through NRDC's newsletters, magazine, and email alerts – is not a "narrow segment of interested persons." Beyond our own publication capabilities, NRDC's proven ability to disseminate information by providing it to national and international media outlets, as outlined in a dozen examples in our initial request, further

demonstrates that disclosure will contribute to the understanding of the public at large. *See* Appendix A at 3-6, Attachments 11-37.

As we explained in our original request, the EBDCs are pesticides of widespread public health concern. *See id.* at 2, Exhibits A and B. At issue in the matter of Request to Reduce Pre-Harvest Interval (PHI) for EBDC Fungicides on Potatoes, EPA-HQ-OPP-2007-0181, is whether pesticide products containing EBDC may be lawfully used on potato crops within 14 and 3 days of harvest, or whether, alternatively, such use may result unreasonable adverse effects on human health and the environment, within the meaning of FIFRA. More than fifteen years ago, EPA concluded that these pesticide uses pose unreasonable risks to human health – in particular, unreasonable cancer risks to children – and therefore they should not be allowed. *See* Appendix C (1992 notice of intent to cancel). But EPA recently initiated an administrative proceeding to reverse its previous health-protective determination, in response to a petition from the chemical industry. *See* Appendix D (July 2007 notice of intent to modify cancellation). Clearly, this administrative proceeding, to which our FOIA request directly relates, has public health implications for anyone who consumes potatoes grown in the United States. A final decision reversing EPA's previous restrictions on EBDC fungicides would increase the public's risk of harm from dietary exposure to these pesticides and their metabolites.

### D.     The disclosure will contribute "significantly" to public understanding of government operations or activities, as compared to the level of understanding prior to the disclosure.

NRDC's request seeks non-publicly available information that will enhance and contribute significantly to public understanding of the government operations and activities at issue. Disclosure of EPA's contacts, meetings, or communications with the pesticide industry, members of Congress or their staff, the media, and other interested individuals and organizations will contribute significantly to public understanding of EPA's administration of FIFRA with respect to pesticide products containing EBDC. Prior to EPA disclosure of such records, the public has no understanding of their nature, extent, and content.

As explained above, EPA is proposing to reverse a long-standing safety determination restricting the use and application of EBDC fungicides on potatoes nationwide, in response to a request from the chemical companies that manufacture EBDCs. The basis for EPA's proposed reversal, and the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies, are matters of clear public interest. NRDC seeks documents, currently shielded from public review, that relate to EPA's communications with the industry and other third parties about the EBDCs and this proposed reversal. These documents would contribute "significantly" to the public's understanding of an important food safety matter of national relevance, and the basis for EPA's decision to reverse itself on the question of necessary protections for children's health.

Furthermore, EPA recently filed several joint motions with the chemical industry in proceedings before an EPA Administrative Law Judge, in an attempt to narrow the scope of judicial review of its proposed reversal of EBDC use restrictions. *See* Appendix E (October 26, 2007 joint reply); Appendix F (NRDC November 7, 2007 surreply); Appendix G (December 12, 2007 joint

response to order); Appendix H (NRDC December 18, 2007 motion for leave to respond). These efforts necessarily involved communications between EPA and industry representatives that would be responsive to NRDC's FOIA request and would not be protected by any applicable privilege. Thus, disclosure of responsive records would further inform the public about EPA's collaboration with chemical companies to weaken safety standards for EBDCs.

The release of FOIA documents relating to other, similar matters involving EPA contacts, meetings, and communications with regulated parties and other outside entities have contributed "significantly" to public understanding of EPA operations and activities. For example, EPA's reversal of safety measures intended to protect children from exposure to rat poisons in response to pesticide industry pressure – a situation quite similar to the EBDC reversal at issue here – garnered extensive news coverage and public interest and contributed significantly to the public's understanding of the basis for EPA's rat poison decision. *See* Appendix I (Joshua Kurlantzick, *The rat pack: when rat poison manufacturers complained about regulations, the EPA rolled over*, Mother Jones, Jan. 1, 2005); Appendix J (Juliet Eilperin, *Rat-Poison Makers Stall Safety Rules: EPA Had Drafted Regulations To Protect Children, Animals*, Wash. Post, Apr. 15, 2004). EPA documents revealing the role played by third parties in that rat poison decision were only made publicly available through an NRDC FOIA request, for which EPA properly granted a fee waiver.

As a further example, NRDC FOIA requests helped to uncover documents that garnered extensive news coverage and public interest with respect to pressure from the pesticide manufacturer Syngenta – including the use of high-profile lobbyists, such as former Senator Bob Dole – to persuade EPA and White House officials to allow continued use of the pesticide atrazine, notwithstanding public health and environmental concerns. *See, e.g.*, Appendix K (Louis Jacobson, *Dole's Lobbying Stirs Up Environmentalists*, Nat'l J., Jan. 3, 2004). Again, NRDC received these documents pursuant to a fee waiver properly granted by EPA.

**E.**    **NRDC has absolutely no commercial interest in disclosure of the information.**

As explained in our original request, NRDC does not seek the requested records for any commercial use. *See* 40 C.F.R. § 2.107(b)(1) (definition of "commercial use request"). NRDC does not have any commercial interest that would be furthered by the requested disclosure. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). As a non-profit, public interest environmental and public health organization, NRDC does not have any commercial, trade, or profit interest. *See* 40 C.F.R. § 2.107(*l*)(3)(i). "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch v. Rossotti*, 326 F. 3d 1309, 1312 (D.C. Cir. 2003) (internal citation omitted). NRDC's interest in obtaining the requested materials is to serve the public interest by disclosing non-public information about EPA's administration of FIFRA and communications with third parties with respect to pesticide products containing EBDC. Release of the requested records will serve to inform the public about this topic of interest to many, and will not advance any commercial, trade, or profit interests of NRDC in any way.

**F.      NRDC has expressed its willingness to pay fees under protest.**

As we stated in our original request, in order to prevent delay in EPA's provision of the requested records, NRDC will, if necessary and under protest, pay fees up to five hundred dollars ($500) in accordance with 40 C.F.R. § 2.107(c)(1)(iv), (c)(2), and (d). Such payment will not constitute any waiver of NRDC's right to seek administrative or judicial review of any denial of its fee waiver request and/or rejection of its fee category assertion.

On January 15, 2008, we received an undated letter from DeVenchi P. Arnold of your office, regarding EPA's response to our request. We will respond to that letter under separate cover.

**III.    Conclusion**

For the reasons discussed above, NRDC asks that EPA immediately grant a fee waiver for all records requested. If EPA denies this appeal or fails to respond, we will promptly file a lawsuit to compel EPA to grant a fee waiver in compliance with FOIA.

Sincerely,

Thomas Cmar
Attorney
Natural Resources Defense Council
(202) 289-2405
tcmar@nrdc.org

**Enclosures (in hard copy and on CD-ROM):**

Appendices A through K



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

**APR 2 5 2008**

OFFICE OF
GENERAL COUNSEL

Mr. Thomas Cmar
Natural Resources Defense Council
1200 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005

Re:    Final Determination of Fee Waiver Appeal; HQ-APP-00040-08

Dear Mr. Cmar:

I am responding to your January 25, 2008 fee waiver appeal under the Freedom of
Information Act ("FOIA"), 5 U.S.C. Sec. 552 ("appeal letter") made on behalf of the
Natural Resources Defense Council ("NRDC"). You appealed the December 28, 2007
decision of Larry F. Gottesman, National FOIA Officer, Office of Environmental
Information, U.S. Environmental Protection Agency ("EPA" or "Agency") to deny your
request for a fee waiver. You seek a waiver of all fees associated with your December
13, 2007 FOIA request for information concerning ethylene bisdithiocarbamate
("EBDC") and pesticide products containing EBDC. You do not challenge the placement
of your request in the "Other" fee category; therefore, I am not addressing the issue.

I have carefully considered your request for a fee waiver, EPA's initial fee waiver
denial, and your appeal. For the reasons set forth below, I have concluded that the appeal
of your request for a complete waiver of fees should be, and is, denied.

**Background on Agency Activities on EDBCs**

You note in your appeal that there is a forthcoming administrative hearing before
the Agency, In the Matter of: Request to Reduce Pre-Harvest Interval (PHI) for EBDC
Fungicides on Potatoes, Docket No. EPA-HQ-OPP-2007-0181;
http://www.epa.gov/oalj/orders/ebdc-pho-091907.pdf). Appeal at 3. This hearing was
requested by NRDC and you are the attorney of record. In your appeal, you acknowledge
that your FOIA request directly relates to this administrative proceeding. Id.

### 1.    Legal Background on the Regulation of Pesticides

EPA regulates pesticides under both the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") and the Federal Food, Drug and Cosmetic Act ("FFDCA"). FIFRA sets forth a licensing scheme for the sale, distribution and use of pesticides. The FFDCA establishes the mechanism and standards by which EPA must set tolerances (allowable levels) for pesticide residues in food. As a general matter, under FIFRA Section 3, before a pesticide can be distributed or sold in the United States, it must be registered. The principal purpose of FIFRA is to regulate the sale, distribution and use of pesticides (through the registration process) while protecting human health and the environment from unreasonable adverse effects associated with pesticides. Under FIFRA, EPA registers a pesticide only after conducting an extensive scientific review of the risks, and when appropriate, benefits of that pesticide to determine whether the use of the pesticide causes "unreasonable adverse effects" to human health or the environment. Registration decisions under Section 3, reregistration decisions under Section 4, and cancellation decisions under Section 6 are all governed by the standard set forth in FIFRA Section 2 (bb); if this standard is not satisfied, EPA may not register or reregister the pesticide and existing pesticides are subject to cancellation. *See* FIFRA §§ 3(c)(5), 4(g), 6(b), 2(bb).

### 2.    EPA's Regulation of EBDCs

EBDC pesticides (Mancozeb, Maneb and Metiram) have food and/or feed uses and both dietary and non-dietary risks were reviewed when they were registered. The EBDCs and their common metabolite ethylene thiourea (ETU) have been reviewed on multiple occasions based on concerns about possible carcinogenic, developmental, and other chronic health risks. Mancozeb and Metiram were first registered in the United States in 1948 and Maneb was first registered in the United States in 1962. All three were used on food and ornamental corps to prevent crop damage in the field and to protect harvested crops from deterioration in storage or transport. *See* http://www.epa.gov/oppsrrd1/REDs/mancozeb_red.pdf; http://www.epa.gov/oppsrrd1/REDs/maneb_red.pdf; http://www.epa.gov/oppsrrd1/REDs/metiram_red_revised.pdf.

For your reference, here is a brief description of EPA's regulation of EBDCs.

- In 1987, the Agency placed the EBDCs into Special Review because of concerns that the common metabolite, ETU, could cause carcinogenic and adverse developmental and thyroid effects in humans. *See* 52 Fed. Reg. 27,172, July 17, 1987.

- Subsequent to the approval of registration amendments requested by the registrants of the EBDCs, the Agency issued a *Notice of Preliminary Determination* that proposed canceling the uses on an additional three crops, including potatoes. The Agency received comments in response that recommended mitigation options to allow continued use of EBDC on potatoes.

Among these mitigation options was to extend the pre-harvest interval to 14 days as most growers already observe a 14-day interval; it was noted that "the (0)-day pre-harvest interval invites contamination of tubers with fungicide residues," which could result in unacceptable dietary risks. *See* 57 Fed. Reg. 7,484, 7,498.

- On March 2, 1992, the Agency issued a *Notice of Intent to Cancel and Conclusion of Special Review*, 57 Fed. Reg.7,484, concluding that the relatively high estimated dietary risk (carcinogenicity, developmental and thyroid effects) outweighed the relatively low benefits of the use of EBDCs on potatoes. In order to allow the use on potatoes to remain, the Agency required the label to contain a 14-day PHI for all but 9 potato-producing states. Id. at 7526. Because of the presence of late blight in those states, a 3-day PHI for use of EBDCs on potatoes was allowed in those states. Id. The Agency allowed the 3-day PHI in these states because the data on light blight, efficacy of possible alternatives, and residue data allowed EPA to find that the benefit outweighed the risks.

- On December 26, 1996, the EBDC/ETU Task Force submitted its first request to modify the existing cancellation order for the use of products containing three EBDCs on potatoes: mancozeb, maneb, and metiram. As noted above, in order to reduce otherwise unacceptable dietary risks, the cancellation order restricted the PHI for potatoes to 14 days in 37 states. In their request, the Task Force requested that the PHI be reduced from 14 days to 3 days nationwide to address the spread of the late blight in potatoes. On August 25, 2003, the Task Force resubmitted its request to the Agency as part of the EBDC reregistration process (available at www.regulations.gov at Docket ID EPA-HQ-OPP-2007-0181-00100). Subsequently, the Agency informed the Task Force that EPA had to consider the impact of the FQPA amendments to the FIFRA and the FFDCA before any action could be taken on the request.

- On November 24, 2004, EPA announced the availability of human health and environmental fate and effects risk assessments, preliminary risk reduction options, and related documents for the EBDC pesticides mancozeb, maneb, and metiram, and a common degradate, ethylene thiourea (ETU). *See* 69 Fed. Reg. 68,352; Certain Ethylenebisdithiocarbamates (EBDCs) and Ethylene Thiourea (ETU); Risk Assessments and Preliminary Risk Reduction Options (Phase 3 of 4-Phase Process); Notice of Availability (available at: http://www.epa.gov/fedrgstr/EPA-PEST/2004/November/Day-24/p26132.htm).

- During a 90-day comment period that closed February 22, 2005, the public was invited to comment on the risk assessments and suggest risk management ideas or proposals to address the risks identified. EPA completed Reregistration Eligibility Decisions (REDs) for mancozeb, maneb, and metiram in the fall of 2005. *Mancozeb RED*, 70 Fed. Reg. 76,828; *Maneb RED*, 70 Fed. Reg. 76,829; *Metiram RED*, 70 Fed. Reg. 76,830. *See* www.Regulations.gov (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metiram), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb).

- The Agency considered the EBDC/ETU Task Force's request to modify the existing cancellation order after the Agency completed the RED process for EBDCs and determined it warranted an opportunity for a hearing.

- The Initial Notice of Hearing in connection with the request to reconsider the previous cancellation order was issued on July 11, 2007. *See* 72 Fed. Reg. 37,771. On December 12, 2007, EPA issued a Notice amending the statement of issues in the Initial Notice. *See* 72 Fed. Reg. 70,586.

The EPA set up a publicly available docket (EPA-HQ-OPP-2007-0181) to address the hearing. The docket is publicly available at the Regulations.gov website. The docket includes supporting and related materials such as the lengthy reregistration eligibility decisions for Mancozeb, Maneb, and Metiram, respectively. The goal of the reregistration program is to mitigate risks associated with the use of older pesticides while preserving their benefits. The reregistration process entails a complete review of human health and environmental effects of pesticides. The results of EPA's reviews are summarized in Reregistration Eligibility Decision (RED) documents, including risk reduction requirements and other health and safety information. In addition, the docket further includes several EPA health and safety evaluation memoranda and a submission from the EBDC/ETU Task Force.

The EPA further provided additional publicly available EBDC-related dockets designated (EPA-HQ-OPP-2004-0078) (releasing for public comment the Agency's health and environmental fate and effects risk assessments, preliminary risk reduction options, and related documents for the EBDCs), (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metiram), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb), and (EPA-HQ-OPP-2007-0151) (risk assessment and related documents for EBDCs). These five dockets contain extensive information relating to the health and safety of EBDCs, including the materials referenced above.

**Statutory and Regulatory Standards for Fee Waivers**

The statutory standard for evaluating fee waiver requests is whether "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government; and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

EPA's regulations at 40 C.F.R. § 2.107(l) establish the same standard. EPA must consider four conditions to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns the operations or activities of the Federal government; (2) whether the disclosure is likely to contribute to an increased understanding of government operations or activities; (3) whether the disclosure is likely to contribute to understanding of "the public" – *i.e.*, a reasonably broad audience of persons interested in the subject matter; and (4) whether the disclosure is likely to contribute <u>significantly</u> to public understanding of government operations or activities.

40 C.F.R. § 2.107(l)(2) (the Public Interest Elements). EPA must consider two conditions to determine whether a request is primarily in the commercial interest of the requester: (1) whether the requester has a commercial interest that would be furthered by the requested documents; and (2) whether any such commercial interest outweighs the public interest in disclosure. 40 C.F.R. § 2.107(l)(3) (the Commercial Interest elements).

A requester seeking a fee waiver bears the burden of showing that the disclosure of the responsive documents is (1) in the public interest; and (2) not primarily in the requester's commercial interest. McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). The requester must therefore explain with reasonable specificity how disclosure of the requested information is in the public interest by demonstrating how such disclosure is likely to contribute significantly to public understanding of government operations or activities. Id. Requests for fee waivers are evaluated on a case-by-case basis. Media Access Project v. FCC, 883 F.2d 1063, 1065 (D.C. Cir. 1989). Conclusory statements or mere allegations that the disclosure of the requested documents will serve the public interest are not sufficient to meet the burden. McClellan, 835 F. 2d at 1285.

**Public Interest Elements**

1. **Subject of the Request: Identifiable Operations or Activities of the Federal Government**

The first element considers whether the subject of the requested records concerns "identifiable operations or activities of the Federal government, with a connection that is direct and clear, not remote." 40 C.F.R. § 2.107(l)(2)(i).

You have met your burden of demonstrating this element. Information regarding EPA contacts, meetings, or communications with pesticide registrants and other outside entities or individuals concerning EBDC pesticides concern the operations or activities of the Federal government, since the information relates to how EPA interacts with pesticide registrants. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003).

2. **The Informative Value of the Documents to be Disclosed**

The second element to consider is the informative value of the documents to be disclosed. 40 C.F.R. § 2.107(l)(2)(ii). The requested documents must be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 40 C.F.R. § 2.107(l)(2)(ii). The disclosure of information already in the public domain would have no informative value since it would not add to the public's understanding of government. Id.

You first suggest that your burden is met because you request information not already publicly available, explaining, "NRDC is requesting only records that are not publicly available. Since such records are not in the public domain, they are likely to be

meaningfully informative about EPA's administration of FIFRA with respect to pesticide products containing EBDC." Appeal at 2. Next, you state your burden is met because the requested records concern EPA's review of the EBDC registrations. Appeal at 4 ("Information about the process of EPA's administration of FIFRA with respect to pesticide products containing EBDC is likely to contribute to the public's understanding of EPA operations and activities."). You do not argue that the requested records will likely contribute to an <u>increased</u> public understanding of EPA's review of EBDC. <u>Id.</u>

NRDC has failed to demonstrate how its request is likely to contribute to an increased public understanding about EPA's application of FIFRA to EBDCs. Requests for information not already publicly available do not automatically qualify for fee waivers. As stated, you have the burden to show how the requested information will be meaningfully informative in order to be likely to contribute to an increased public understanding of those operations or activities. 40 C.F.R. § 2.107(l)(2)(ii); <u>McClellan 835 F. 2d at 1285</u>; <u>Larson v. CIA</u>, 843 F.2d 1481 (D.C. Cir 1988); <u>National Treasury Employees Union v. Griffin</u>, 811 F.2d 644, 647 (D.C. Cir. 1987); <u>Project on Military Procurement v. Department of the Navy</u>, 710 F. Supp. 362, 365, n.7 (D.D.C. 1989).

There is no reason to believe that your request will likely lead to an increased public understanding of EPA's review of EBDC given the vast amount of information already available in the public domain. There is an extensive amount of information publicly available concerning "the process of EPA's administration of FIFRA with respect to pesticide products containing EBDC." EPA has made available to the public on its website and in electronic dockets numerous findings on EBDCs, and it has provided an opportunity for public participation in the reregistration process. As discussed below in the Element 4 Section, which I am incorporating by reference, information concerning EPA's review of EBDCs is available on EPA's website, on the Regulations.gov website, and through other sources. For example, the EPA website contains Reregistration Eligibility Decisions for each EBDC, which explain the basis for the Agency's decision-making. *See, e.g.*, EPA Reregistration Eligibility Decision for Mancozeb (Sept. 2005) available at http://www.epa.gov/oppsrrd1/REDs/mancozeb_red.pdf.

Moreover, the information sought in this request is not limited to information concerning the health effects of EBDCs, but instead encompasses all documents reflecting communication with outside entities concerning EBDCs, regardless of the specific subject matter of the communication. EPA has correspondence with EBDC registrants on a regular basis concerning a variety of routine matters – such as amendments to labeling that involve changes in warranty disclosure statements, minor changes in the directions for use, and changes in marketing materials and claims of effectiveness. In addition to labeling, there is correspondence on minor changes in formulation, manufacturing sources, data compensation and production data. These communications have little or no bearing on the public health issues that NRDC identifies as the basis for its fee waiver request. As stated, the materials relevant to these public health issues are the materials associated with the reregistration process of EBDCs – including comments received from EBDC registrants – which are available in public

dockets posted on the EPA website. *See* www.Regulations.gov (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metriam), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb).

Finally, I note that the administrative hearing regarding modifying the PHI for EBDCs on potatoes includes the opportunity for discovery. 40 C.F.R. §§ 164.50,164.51. Accordingly, even assuming that there is additional information relevant to the change in PHI on potatoes that is not currently available to the public (and NRDC has given no reason to believe that there is), such information could be obtained by NRDC (and made available to the public) through the administrative hearing process. Thus, there is no reason to believe that NRDC's FOIA request is likely to increase public understanding beyond the information available to the public through past and upcoming public administrative proceedings.

### 3.    Contribution to the Understanding of the Subject by a Broad Audience of the Public

The third element to consider is how the disclosure of the requested documents will likely contribute to "public" understanding, *i.e.*, the understanding of "a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 40 C.F.R. § 2.107(l)(2)(iii). The requester's expertise in the subject area and its "ability and intention to effectively convey information to the public will be considered." Id. You have demonstrated that you have the requisite expertise and the ability to disseminate the requested information to the public. Therefore, you have made the required showing under this factor.

### 4.    Significant Contribution to Public Understanding of Government Operations or Activities

The requester seeking a fee waiver must show that the disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations or activities. 40 C.F.R. § 2.107(l)(2)(iv). Disclosure of the information should significantly enhance the public's understanding of the subject in question as compared to the level of public understanding prior to disclosure. Id.

NRDC specifically argues that "[t]he basis for EPA's proposed reversal, and the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies, are matters of clear public interest." Appeal at 4. "These documents would contribute 'significantly' to the public's understanding of an important food safety matter of national relevance, and the basis for EPA's decision to reverse itself on the question of necessary protections for children's health." Id. at 4.

NRDC has failed to show that the information requested will significantly contribute to public understanding about EPA's operations. As a preliminary matter, NRDC's argument concerning a so-called EPA "reversal" is misleading. In 1992, EPA issued a Notice of Intent to Cancel (NOIC) registrations containing EBDCs for use on certain crops and an agreement was reached and effected through order by an

administrative law judge. When the Agency receives an application to permit use of a pesticide in a manner inconsistent with a cancellation order, the application will be treated as a petition for modification of the cancellation order. In accordance with 40 C.F.R. § 164 Subpart D, the Administrator must then decide whether to initiate a hearing to address the modification. After the 1992 order implementing the settlement agreement between EPA and registrants, EPA received a request to allow for a 3-day pre-harvest interval for all states. The pre-harvest interval is the number of days between the last application of a pesticide and when the crop can be harvested. EPA previously allowed 9 states, and then 4 additional states, with late harvest blight problems to use a 3-day pre-harvest interval. EPA treated the request to extend the 3-day interval from 13 states to all states as a petition to modify the 1992 cancellation order.

The Administrator reviews the request for modification according to the relevant standard for reviewing petitions at 40 C.F.R. § 164.131(c). This standard allows for reconsideration where "substantial new evidence" is presented that was not previously available and could not have been discovered through the exercise of due diligence. Id. If the Administrator finds that reconsideration is warranted based on the submissions, then the Administrator must publish notice for a public hearing on the issue.

Here, EPA announced that the EBDC/ETU Task Force's petition requesting modification of the cancellation order may proceed and announced an opportunity for a public hearing. See Notice of Hearing on Request to Reduce Pre-Harvest Interval for EBDC Fungicides on Potatoes, 72 Fed. Reg. 37771. The Federal Register notice provided the explanation and basis for the Administrator's decision to allow the modification process to move forward to a potential hearing. For example, the notice addressed the substantial new evidence provided by the Task Force. This evidence has been made available on the Regulations.gov website at DOCKET ID EPA-HQ-OPP-2007-0181-0010.

In its fee waiver request and appeal, NRDC does not address the administrative process that has taken place, the available docket, or the explanations provided to the public in the Federal Register notice. Instead, NRDC simply argues that non-public information will substantially increase public knowledge about the basis of EPA's decision to allow the hearing process to move forward. As explained, the Agency followed the regulatory process and requirements set out in FIFRA and the Agency's implementing regulations when "applying FIFRA" to products using EBDCs. NRDC appears to suggest that a fee waiver must be granted any time a request asks for nonpublic information concerning the basis for an agency's decision – even though the basis for the agency's decision has been fully explained on the public record, and the requester has put forward no reason to believe that this public explanation was presented in bad faith.

In addition, the scope of your FOIA request extends far beyond the justification proferred for your fee waiver request. While you claim that your FOIA request will significantly enhance public understanding of governmental operations by shedding light on the basis for "EPA's proposed reversal," your FOIA request is not limited to

8

documents concerning "EPA's proposed reversal" *i.e.,* the Administrator's application of 40 C.F.R. § 164.131 to the modification request. Nor is NRDC's request limited to the issue of extending the 3-day pre-harvest interval from 13 states to all states. NRDC has requested *any* documents "reflecting or relating to" *any* contacts with *any* "outside entities or individuals" that *in any way* concern EBDCs or pesticides containing EBDC, *from August 18, 2003 to the present*. As explained above, this request would encompass potentially thousands of documents, many of a routine nature, that have nothing to do with EPA's decision-making in the administrative proceeding at issue in your fee request.

Agencies are not required to grant fee waivers in response to FOIA requests that constitute nothing more than "fishing expeditions" based on speculations of malfeasance. AFGE v. U.S. Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986) (" Society undoubtedly has an interest in discovering and subjecting unlawful agency action to public scrutiny, but the Union's allegations of malfeasance here are too ephemeral at the moment to warrant such a search at public expense without further reason to suppose that the corruption suspected will be found."); Van Fripp v. Parks, No. 97-0159, 2000 U.S. Dist. LEXIS 20158, at *16 (D.D.C. Mar 16, 2000) (upholding denial of fee waiver given that request was merely a "fishing expedition that does not relate to defined operations or activities": "while the plaintiff charges that the [requested] documents may demonstrate an alleged misappropriation of [agency] monies, he fails to explain or describe the nature of the misappropriation"). Accordingly, a fee waiver is not warranted here.

**Conclusion**

You have failed to meet your burden with respect to factors 2 and 4 in the public interest prong of the fee waiver test. I conclude that you have not satisfied your burden of showing that the release of the requested documents will serve the public interest. I therefore need not decide whether you have met your burden with respect to the commercial interest prong of the fee waiver test, *i.e.*, whether or not the requested information is "primarily in the commercial interest of the requester" (5 U.S.C. § 552(a)(40(A)(iii)), since the statute requires that both prongs of the test must be satisfied for a fee to be waived or reduced. Accordingly, I am denying your fee waiver appeal.

This letter constitutes EPA's final determination on this matter.

Sincerely,

Kevin M. Miller
Assistant General Counsel
General Law Office

cc:      HQ FOI Office

9