UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------x
                                                 :
NATURAL RESOURCES DEFENSE                        :    **DECLARATION OF**
COUNCIL, INC.,                                   :    **THOMAS CMAR**
                                                 :
        Plaintiff,                               :    08 Civ. 2443 (DLC)
                                                 :
   - v. -                                        :    ECF Case
                                                 :
UNITED STATES ENVIRONMENTAL                      :
PROTECTION AGENCY,                               :
                                                 :
        Defendant.                               :
-------------------------------------------------x
```

I, Thomas Cmar, make the following declaration:

    1. I am an attorney for the Natural Resources Defense Council, Inc. ("NRDC"), the plaintiff in the above-captioned case. I make this declaration based on my own knowledge.

    2. Attached as Exhibit A is a true and correct copy of an email that I received from Mr. Serrin Turner, counsel for EPA in this case, on April 25, 2008, and its attachment.

Pursuant to 28 U.S.C. § 1746, I declare and affirm under penalty of perjury that the foregoing is true and correct.


  /s
Thomas Cmar

Executed in Washington, DC this 14th day of July, 2008.

# Exhibit A

# Cmar, Thomas

| | |
|---|---|
| **From:** | Turner, Serrin (USANYS) [Serrin.Turner@usdoj.gov] |
| **Sent:** | Friday, April 25, 2008 1:02 PM |
| **To:** | Cmar, Thomas |
| **Subject:** | FW: fee waiver appeal |
| **Attachments:** | HQ.APP.00040.08.Fee.Waiver.Determination.4.25.08.pdf |



HQ.APP.00040.08.
Fee.Waiver.Det...

```
            Thom --

Apologies for not getting back to you sooner on this, but the EPA has now finalized its
decision on your fee waiver appeal.  The decision is attached; my understanding is that
the agency will be sending out a hard copy to you today.  Please feel free to call me if
you have any questions or would like to discuss how NRDC intends to proceed in the
litigation in light of the decision.

Thanks,
Serrin


--

Serrin Turner
Assistant United States Attorney
U.S. Attorney's Office, Southern District of New York Civil Division
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2701
Fax: (212) 637-2686
serrin.turner@usdoj.gov




-----Original Message-----
From: Miller.Kevin@epamail.epa.gov [mailto:Miller.Kevin@epamail.epa.gov]

Sent: Friday, April 25, 2008 12:55 PM
To: Turner, Serrin (USANYS)
Cc: Goerke.Ariadne@epamail.epa.gov; Koch.Erin@epamail.epa.gov;
knorr.michele@epamail.epa.gov
Subject: fee waiver appeal

Serrin,

Here is my fee waiver decision.

(See attached file:
HQ.APP.00040.08.Fee.Waiver.Determination.4.25.08.pdf)

Kevin Miller
Office of General Counsel (Mail Code 2377A) U.S. Environmental Protection Agency 1200
Pennsylvania Ave., N.W.
Washington D.C. 20460
202-564-2691
```

1



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

APR 2 5 2008

OFFICE OF
GENERAL COUNSEL

Mr. Thomas Cmar
Natural Resources Defense Council
1200 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005

Re:   Final Determination of Fee Waiver Appeal; HQ-APP-00040-08

Dear Mr. Cmar:

    I am responding to your January 25, 2008 fee waiver appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 552 ("appeal letter") made on behalf of the Natural Resources Defense Council ("NRDC"). You appealed the December 28, 2007 decision of Larry F. Gottesman, National FOIA Officer, Office of Environmental Information, U.S. Environmental Protection Agency ("EPA" or "Agency") to deny your request for a fee waiver. You seek a waiver of all fees associated with your December 13, 2007 FOIA request for information concerning ethylene bisdithiocarbamate ("EBDC") and pesticide products containing EBDC. You do not challenge the placement of your request in the "Other" fee category; therefore, I am not addressing the issue.

    I have carefully considered your request for a fee waiver, EPA's initial fee waiver denial, and your appeal. For the reasons set forth below, I have concluded that the appeal of your request for a complete waiver of fees should be, and is, denied.

**Background on Agency Activities on EDBCs**

    You note in your appeal that there is a forthcoming administrative hearing before the Agency, In the Matter of: Request to Reduce Pre-Harvest Interval (PHI) for EBDC Fungicides on Potatoes, Docket No. EPA-HQ-OPP-2007-0181; http://www.epa.gov/oalj/orders/ebdc-pho-091907.pdf). Appeal at 3. This hearing was requested by NRDC and you are the attorney of record. In your appeal, you acknowledge that your FOIA request directly relates to this administrative proceeding. Id.

1.  **Legal Background on the Regulation of Pesticides**

EPA regulates pesticides under both the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") and the Federal Food, Drug and Cosmetic Act ("FFDCA"). FIFRA sets forth a licensing scheme for the sale, distribution and use of pesticides. The FFDCA establishes the mechanism and standards by which EPA must set tolerances (allowable levels) for pesticide residues in food. As a general matter, under FIFRA Section 3, before a pesticide can be distributed or sold in the United States, it must be registered. The principal purpose of FIFRA is to regulate the sale, distribution and use of pesticides (through the registration process) while protecting human health and the environment from unreasonable adverse effects associated with pesticides. Under FIFRA, EPA registers a pesticide only after conducting an extensive scientific review of the risks, and when appropriate, benefits of that pesticide to determine whether the use of the pesticide causes "unreasonable adverse effects" to human health or the environment. Registration decisions under Section 3, reregistration decisions under Section 4, and cancellation decisions under Section 6 are all governed by the standard set forth in FIFRA Section 2 (bb); if this standard is not satisfied, EPA may not register or reregister the pesticide and existing pesticides are subject to cancellation. *See* FIFRA §§ 3(c)(5), 4(g), 6(b), 2(bb).

2.  **EPA's Regulation of EBDCs**

EBDC pesticides (Mancozeb, Maneb and Metiram) have food and/or feed uses and both dietary and non-dietary risks were reviewed when they were registered. The EBDCs and their common metabolite ethylene thiourea (ETU) have been reviewed on multiple occasions based on concerns about possible carcinogenic, developmental, and other chronic health risks. Mancozeb and Metiram were first registered in the United States in 1948 and Maneb was first registered in the United States in 1962. All three were used on food and ornamental corps to prevent crop damage in the field and to protect harvested crops from deterioration in storage or transport. *See*
http://www.epa.gov/oppsrrd1/REDs/mancozeb_red.pdf;
http://www.epa.gov/oppsrrd1/REDs/maneb_red.pdf;
http://www.epa.gov/oppsrrd1/REDs/metiram_red_revised.pdf.

For your reference, here is a brief description of EPA's regulation of EBDCs.

- In 1987, the Agency placed the EBDCs into Special Review because of concerns that the common metabolite, ETU, could cause carcinogenic and adverse developmental and thyroid effects in humans. *See* 52 Fed. Reg. 27,172, July 17, 1987.

- Subsequent to the approval of registration amendments requested by the registrants of the EBDCs, the Agency issued a *Notice of Preliminary Determination* that proposed canceling the uses on an additional three crops, including potatoes. The Agency received comments in response that recommended mitigation options to allow continued use of EBDC on potatoes.

2

Among these mitigation options was to extend the pre-harvest interval to 14 days as most growers already observe a 14-day interval; it was noted that "the (0)-day pre-harvest interval invites contamination of tubers with fungicide residues," which could result in unacceptable dietary risks. *See* 57 Fed. Reg. 7,484, 7,498.

- On March 2, 1992, the Agency issued a *Notice of Intent to Cancel and Conclusion of Special Review*, 57 Fed. Reg. 7,484, concluding that the relatively high estimated dietary risk (carcinogenicity, developmental and thyroid effects) outweighed the relatively low benefits of the use of EBDCs on potatoes. In order to allow the use on potatoes to remain, the Agency required the label to contain a 14-day PHI for all but 9 potato-producing states. Id. at 7526. Because of the presence of late blight in those states, a 3-day PHI for use of EBDCs on potatoes was allowed in those states. Id. The Agency allowed the 3-day PHI in these states because the data on light blight, efficacy of possible alternatives, and residue data allowed EPA to find that the benefit outweighed the risks.

- On December 26, 1996, the EBDC/ETU Task Force submitted its first request to modify the existing cancellation order for the use of products containing three EBDCs on potatoes: mancozeb, maneb, and metiram. As noted above, in order to reduce otherwise unacceptable dietary risks, the cancellation order restricted the PHI for potatoes to 14 days in 37 states. In their request, the Task Force requested that the PHI be reduced from 14 days to 3 days nationwide to address the spread of the late blight in potatoes. On August 25, 2003, the Task Force resubmitted its request to the Agency as part of the EBDC reregistration process (available at www.regulations.gov at Docket ID EPA-HQ-OPP-2007-0181-00100). Subsequently, the Agency informed the Task Force that EPA had to consider the impact of the FQPA amendments to the FIFRA and the FFDCA before any action could be taken on the request.

- On November 24, 2004, EPA announced the availability of human health and environmental fate and effects risk assessments, preliminary risk reduction options, and related documents for the EBDC pesticides mancozeb, maneb, and metiram, and a common degradate, ethylene thiourea (ETU). *See* 69 Fed. Reg. 68,352; Certain Ethylenebisdithiocarbamates (EBDCs) and Ethylene Thiourea (ETU); Risk Assessments and Preliminary Risk Reduction Options (Phase 3 of 4-Phase Process); Notice of Availability (available at: http://www.epa.gov/fedrgstr/EPA-PEST/2004/November/Day-24/p26132.htm).

- During a 90-day comment period that closed February 22, 2005, the public was invited to comment on the risk assessments and suggest risk management ideas or proposals to address the risks identified. EPA completed Reregistration Eligibility Decisions (REDs) for mancozeb, maneb, and metiram in the fall of 2005. *Mancozeb RED*, 70 Fed. Reg. 76,828; *Maneb RED*, 70 Fed. Reg. 76,829; *Metiram RED*, 70 Fed. Reg. 76,830. *See* www.Regulations.gov (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metiram), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb).

3

- The Agency considered the EBDC/ETU Task Force's request to modify the existing cancellation order after the Agency completed the RED process for EBDCs and determined it warranted an opportunity for a hearing.

- The Initial Notice of Hearing in connection with the request to reconsider the previous cancellation order was issued on July 11, 2007. *See* 72 Fed. Reg. 37,771. On December 12, 2007, EPA issued a Notice amending the statement of issues in the Initial Notice. *See* 72 Fed. Reg. 70,586.

The EPA set up a publicly available docket (EPA-HQ-OPP-2007-0181) to address the hearing. The docket is publicly available at the Regulations.gov website. The docket includes supporting and related materials such as the lengthy reregistration eligibility decisions for Mancozeb, Maneb, and Metiram, respectively. The goal of the reregistration program is to mitigate risks associated with the use of older pesticides while preserving their benefits. The reregistration process entails a complete review of human health and environmental effects of pesticides. The results of EPA's reviews are summarized in Reregistration Eligibility Decision (RED) documents, including risk reduction requirements and other health and safety information. In addition, the docket further includes several EPA health and safety evaluation memoranda and a submission from the EBDC/ETU Task Force.

The EPA further provided additional publicly available EBDC-related dockets designated (EPA-HQ-OPP-2004-0078) (releasing for public comment the Agency's health and environmental fate and effects risk assessments, preliminary risk reduction options, and related documents for the EBDCs), (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metiram), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb), and (EPA-HQ-OPP-2007-0151) (risk assessment and related documents for EBDCs). These five dockets contain extensive information relating to the health and safety of EBDCs, including the materials referenced above.

**Statutory and Regulatory Standards for Fee Waivers**

The statutory standard for evaluating fee waiver requests is whether "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government; and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

EPA's regulations at 40 C.F.R. § 2.107(l) establish the same standard. EPA must consider four conditions to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns the operations or activities of the Federal government; (2) whether the disclosure is likely to contribute to an increased understanding of government operations or activities; (3) whether the disclosure is likely to contribute to understanding of "the public" – *i.e.*, a reasonably broad audience of persons interested in the subject matter; and (4) whether the disclosure is likely to contribute <u>significantly</u> to public understanding of government operations or activities.

4

40 C.F.R. § 2.107(l)(2) (the Public Interest Elements). EPA must consider two conditions to determine whether a request is primarily in the commercial interest of the requester: (1) whether the requester has a commercial interest that would be furthered by the requested documents; and (2) whether any such commercial interest outweighs the public interest in disclosure. 40 C.F.R. § 2.107(l)(3) (the Commercial Interest elements).

A requester seeking a fee waiver bears the burden of showing that the disclosure of the responsive documents is (1) in the public interest; and (2) not primarily in the requester's commercial interest. McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). The requester must therefore explain with reasonable specificity how disclosure of the requested information is in the public interest by demonstrating how such disclosure is likely to contribute significantly to public understanding of government operations or activities. Id. Requests for fee waivers are evaluated on a case-by-case basis. Media Access Project v. FCC, 883 F.2d 1063, 1065 (D.C. Cir. 1989). Conclusory statements or mere allegations that the disclosure of the requested documents will serve the public interest are not sufficient to meet the burden. McClellan, 835 F. 2d at 1285.

**Public Interest Elements**

1. **Subject of the Request: Identifiable Operations or Activities of the Federal Government**

The first element considers whether the subject of the requested records concerns "identifiable operations or activities of the Federal government, with a connection that is direct and clear, not remote." 40 C.F.R. § 2.107(l)(2)(i).

You have met your burden of demonstrating this element. Information regarding EPA contacts, meetings, or communications with pesticide registrants and other outside entities or individuals concerning EBDC pesticides concern the operations or activities of the Federal government, since the information relates to how EPA interacts with pesticide registrants. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003).

2. **The Informative Value of the Documents to be Disclosed**

The second element to consider is the informative value of the documents to be disclosed. 40 C.F.R. § 2.107(l)(2)(ii). The requested documents must be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 40 C.F.R. § 2.107(l)(2)(ii). The disclosure of information already in the public domain would have no informative value since it would not add to the public's understanding of government. Id.

You first suggest that your burden is met because you request information not already publicly available, explaining, "NRDC is requesting only records that are not publicly available. Since such records are not in the public domain, they are likely to be

5

meaningfully informative about EPA's administration of FIFRA with respect to pesticide products containing EBDC." Appeal at 2. Next, you state your burden is met because the requested records concern EPA's review of the EBDC registrations. Appeal at 4 ("Information about the process of EPA's administration of FIFRA with respect to pesticide products containing EBDC is likely to contribute to the public's understanding of EPA operations and activities."). You do not argue that the requested records will likely contribute to an increased public understanding of EPA's review of EBDC. Id.

NRDC has failed to demonstrate how its request is likely to contribute to an increased public understanding about EPA's application of FIFRA to EBDCs. Requests for information not already publicly available do not automatically qualify for fee waivers. As stated, you have the burden to show how the requested information will be meaningfully informative in order to be likely to contribute to an increased public understanding of those operations or activities. 40 C.F.R. § 2.107(I)(2)(ii); McClellan 835 F. 2d at 1285; Larson v. CIA, 843 F.2d 1481 (D.C. Cir 1988); National Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C. Cir. 1987); Project on Military Procurement v. Department of the Navy, 710 F. Supp. 362, 365, n.7 (D.D.C. 1989).

There is no reason to believe that your request will likely lead to an increased public understanding of EPA's review of EBDC given the vast amount of information already available in the public domain. There is an extensive amount of information publicly available concerning "the process of EPA's administration of FIFRA with respect to pesticide products containing EBDC." EPA has made available to the public on its website and in electronic dockets numerous findings on EBDCs, and it has provided an opportunity for public participation in the reregistration process. As discussed below in the Element 4 Section, which I am incorporating by reference, information concerning EPA's review of EBDCs is available on EPA's website, on the Regulations.gov website, and through other sources. For example, the EPA website contains Reregistration Eligibility Decisions for each EBDC, which explain the basis for the Agency's decision-making. See, e.g., EPA Reregistration Eligibility Decision for Mancozeb (Sept. 2005) available at http://www.epa.gov/oppsrrd1/REDs/mancozeb_red.pdf.

Moreover, the information sought in this request is not limited to information concerning the health effects of EBDCs, but instead encompasses all documents reflecting communication with outside entities concerning EBDCs, regardless of the specific subject matter of the communication. EPA has correspondence with EBDC registrants on a regular basis concerning a variety of routine matters – such as amendments to labeling that involve changes in warranty disclosure statements, minor changes in the directions for use, and changes in marketing materials and claims of effectiveness. In addition to labeling, there is correspondence on minor changes in formulation, manufacturing sources, data compensation and production data. These communications have little or no bearing on the public health issues that NRDC identifies as the basis for its fee waiver request. As stated, the materials relevant to these public health issues are the materials associated with the reregistration process of EBDCs – including comments received from EBDC registrants – which are available in public

dockets posted on the EPA website. *See* www.Regulations.gov (EPA-HQ-OPP-2005-0176) (RED docket for Mancozeb), (EPA-HQ-OPP-2005-0177) (RED docket for Metriam), (EPA-HQ-OPP-2005-0178) (RED docket for Maneb).

Finally, I note that the administrative hearing regarding modifying the PHI for EBDCs on potatoes includes the opportunity for discovery. 40 C.F.R. §§ 164.50, 164.51. Accordingly, even assuming that there is additional information relevant to the change in PHI on potatoes that is not currently available to the public (and NRDC has given no reason to believe that there is), such information could be obtained by NRDC (and made available to the public) through the administrative hearing process. Thus, there is no reason to believe that NRDC's FOIA request is likely to increase public understanding beyond the information available to the public through past and upcoming public administrative proceedings.

  3.  **Contribution to the Understanding of the Subject by a Broad Audience of the Public**

The third element to consider is how the disclosure of the requested documents will likely contribute to "public" understanding, *i.e.*, the understanding of "a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 40 C.F.R. § 2.107(l)(2)(iii). The requester's expertise in the subject area and its "ability and intention to effectively convey information to the public will be considered." Id. You have demonstrated that you have the requisite expertise and the ability to disseminate the requested information to the public. Therefore, you have made the required showing under this factor.

  4.  **Significant Contribution to Public Understanding of Government Operations or Activities**

The requester seeking a fee waiver must show that the disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations or activities. 40 C.F.R. § 2.107(l)(2)(iv). Disclosure of the information should significantly enhance the public's understanding of the subject in question as compared to the level of public understanding prior to disclosure. Id.

NRDC specifically argues that "[t]he basis for EPA's proposed reversal, and the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies, are matters of clear public interest." Appeal at 4. "These documents would contribute 'significantly' to the public's understanding of an important food safety matter of national relevance, and the basis for EPA's decision to reverse itself on the question of necessary protections for children's health." Id. at 4.

NRDC has failed to show that the information requested will significantly contribute to public understanding about EPA's operations. As a preliminary matter, NRDC's argument concerning a so-called EPA "reversal" is misleading. In 1992, EPA issued a Notice of Intent to Cancel (NOIC) registrations containing EBDCs for use on certain crops and an agreement was reached and effected through order by an

administrative law judge. When the Agency receives an application to permit use of a pesticide in a manner inconsistent with a cancellation order, the application will be treated as a petition for modification of the cancellation order. In accordance with 40 C.F.R. § 164 Subpart D, the Administrator must then decide whether to initiate a hearing to address the modification. After the 1992 order implementing the settlement agreement between EPA and registrants, EPA received a request to allow for a 3-day pre-harvest interval for all states. The pre-harvest interval is the number of days between the last application of a pesticide and when the crop can be harvested. EPA previously allowed 9 states, and then 4 additional states, with late harvest blight problems to use a 3-day pre-harvest interval. EPA treated the request to extend the 3-day interval from 13 states to all states as a petition to modify the 1992 cancellation order.

The Administrator reviews the request for modification according to the relevant standard for reviewing petitions at 40 C.F.R. § 164.131(c). This standard allows for reconsideration where "substantial new evidence" is presented that was not previously available and could not have been discovered through the exercise of due diligence. Id. If the Administrator finds that reconsideration is warranted based on the submissions, then the Administrator must publish notice for a public hearing on the issue.

Here, EPA announced that the EBDC/ETU Task Force's petition requesting modification of the cancellation order may proceed and announced an opportunity for a public hearing. *See* Notice of Hearing on Request to Reduce Pre-Harvest Interval for EBDC Fungicides on Potatoes, 72 Fed. Reg. 37771. The Federal Register notice provided the explanation and basis for the Administrator's decision to allow the modification process to move forward to a potential hearing. For example, the notice addressed the substantial new evidence provided by the Task Force. This evidence has been made available on the Regulations.gov website at DOCKET ID EPA-HQ-OPP-2007-0181-0010.

In its fee waiver request and appeal, NRDC does not address the administrative process that has taken place, the available docket, or the explanations provided to the public in the Federal Register notice. Instead, NRDC simply argues that non-public information will substantially increase public knowledge about the basis of EPA's decision to allow the hearing process to move forward. As explained, the Agency followed the regulatory process and requirements set out in FIFRA and the Agency's implementing regulations when "applying FIFRA" to products using EBDCs. NRDC appears to suggest that a fee waiver must be granted any time a request asks for nonpublic information concerning the basis for an agency's decision – even though the basis for the agency's decision has been fully explained on the public record, and the requester has put forward no reason to believe that this public explanation was presented in bad faith.

In addition, the scope of your FOIA request extends far beyond the justification proferred for your fee waiver request. While you claim that your FOIA request will significantly enhance public understanding of governmental operations by shedding light on the basis for "EPA's proposed reversal," your FOIA request is not limited to

8

documents concerning "EPA's proposed reversal" *i.e.*, the Administrator's application of 40 C.F.R. § 164.131 to the modification request. Nor is NRDC's request limited to the issue of extending the 3-day pre-harvest interval from 13 states to all states. NRDC has requested *any* documents "reflecting or relating to" *any* contacts with *any* "outside entities or individuals" that *in any way* concern EBDCs or pesticides containing EBDC, *from August 18, 2003 to the present*. As explained above, this request would encompass potentially thousands of documents, many of a routine nature, that have nothing to do with EPA's decision-making in the administrative proceeding at issue in your fee request.

Agencies are not required to grant fee waivers in response to FOIA requests that constitute nothing more than "fishing expeditions" based on speculations of malfeasance. AFGE v. U.S. Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986) (" Society undoubtedly has an interest in discovering and subjecting unlawful agency action to public scrutiny, but the Union's allegations of malfeasance here are too ephemeral at the moment to warrant such a search at public expense without further reason to suppose that the corruption suspected will be found."); Van Fripp v. Parks, No. 97-0159, 2000 U.S. Dist. LEXIS 20158, at *16 (D.D.C. Mar 16, 2000) (upholding denial of fee waiver given that request was merely a "fishing expedition that does not relate to defined operations or activities": "while the plaintiff charges that the [requested] documents may demonstrate an alleged misappropriation of [agency] monies, he fails to explain or describe the nature of the misappropriation"). Accordingly, a fee waiver is not warranted here.

**Conclusion**

You have failed to meet your burden with respect to factors 2 and 4 in the public interest prong of the fee waiver test. I conclude that you have not satisfied your burden of showing that the release of the requested documents will serve the public interest. I therefore need not decide whether you have met your burden with respect to the commercial interest prong of the fee waiver test, *i.e.*, whether or not the requested information is "primarily in the commercial interest of the requester" (5 U.S.C. § 552(a)(40(A)(iii)), since the statute requires that both prongs of the test must be satisfied for a fee to be waived or reduced. Accordingly, I am denying your fee waiver appeal.

This letter constitutes EPA's final determination on this matter.

Sincerely,

Kevin M. Miller
Assistant General Counsel
General Law Office

cc:     HQ FOI Office