UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 08 Civ. 2443 (DLC) |
| | : | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | : | ECF CASE |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant

SERRIN TURNER
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2701
Fax: (212) 637-2686
Email: serrin.turner@usdoj.gov

-ii-

**TABLE OF CONTENTS**

Argument .................................................................................................................................. 1

A.  EPA's Final Denial Letter Can and Should Be Considered by the Court............................. 1

B.  The Court Should Uphold EPA's Fee Waiver Denial ........................................................... 3

    1.  Regardless of Its Non-Commercial Status, NRDC Must Demonstrate
That Disclosure Is Likely to Contribute Significantly to Public Understanding ............ 3

    2.  NRDC Has Failed to Demonstrate That the Disclosure Sought Is Likely
to Contribute Significantly to Public Understanding ...................................................... 4

        a.  NRDC's Attempt to Reframe the Justification for Its Fee Waiver
Request Should Be Rejected ................................................................................. 4

        b.  NRDC's Prior FOIA Requests Are Irrelevant ........................................................ 7

        c.  NRDC's Remaining Arguments Are Unpersuasive............................................... 8

Conclusion ............................................................................................................................... 10

**TABLE OF AUTHORITIES**

Cases

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) .................................................. 9

*Ctr. for Biological Diversity v. OMB*, 546 F. Supp. 2d 722 (N.D. Cal. 2008) .............................. 7

*Dollinger v. USPS*, 95 Civ. 6174T, slip op. (W.D.N.Y. Aug. 24, 1995) ........................................ 8

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ................................................. 1

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 97 Civ. 2089, slip op. (D.D.C. Jul. 14, 1998) ......... 8

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 99 Civ. 2315, 2000 WL 33724693
   (D.D.C. Aug. 17, 2000) ............................................................................................................ 8

*M.K. v. U.S. Dep't of Justice*, 96 Civ. 1307, 1996 WL 509724 (S.D.N.Y. Sep. 9, 1996) .............. 1

*McClain v. U.S. Dep't of Justice*, 13 F.3d 220 (7th Cir. 1993) ...................................................... 4

*McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987) ............... 4, 7

*Media Access Project v. FCC*, 833 F.2d 1063 (D.C. Cir. 1989) .................................................... 8

*Moody Hill Farms v. U.S. Dep't of Interior*, 95 Civ. 11001 (RWS), 1996 WL 474209
   (S.D.N.Y. Aug. 20, 1996) ........................................................................................................ 2

*Rochester-Genesee Reg'l Transp. Auth. v. Hynes-Cherin*, 531 F. Supp. 2d 494
   (W.D.N.Y. 2008) ...................................................................................................................... 2

*Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987) .................................................. 1

*Tomscha v. General Services Admin.*, 158 Fed. Appx. 329 (2d Cir. 2005) ................................... 7

*VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55 (D.D.C. 2002) .............................................. 4, 8, 10

*Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71 (2d Cir. 2006) ..................................................... 2

Statutes

5 U.S.C. § 552(a)(4)(A) ............................................................................................................ 1, 4

5 U.S.C. § 552(a)(6)(A) ................................................................................................................ 1

Regulations

40 C.F.R. § 2.104(j)(4) .................................................................................................................. 1

-iv-

Other Authorities

U.S. Dep't of Justice, *Freedom of Information Act Guide: Fees and Fee Waivers*, http://www.usdoj.gov/oip/fees.htm ................................................................................................ 8

**ARGUMENT**

A.      **EPA's Final Denial Letter Can and Should Be Considered by the Court**

NRDC contends that the Court should not consider EPA's Denial Letter[1] because "the administrative proceeding below . . . concluded as of the date that the litigation commenced." NRDC Opp. at 3. NRDC cites no case, however, directly holding that an agency cannot complete its decision-making on a fee waiver request after the commencement of litigation. The FOIA statute itself does not explicitly set any time period within which an agency must resolve a fee waiver request. *See* 5 U.S.C. § 552(a)(4)(A). While the statute includes a constructive exhaustion provision for requests for documents, 5 U.S.C. § 552(a)(6)(A), which some courts have extended to the fee waiver context, *e.g., Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003), the only upshot of constructive exhaustion is that the requester may bring suit without waiting for further administrative action. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987). It does not follow that the agency is thereafter barred from completing any outstanding administrative action voluntarily. By comparison, where a requester sues to compel document production after constructively exhausting administrative remedies, the requester is not automatically entitled to obtain the documents sought; instead, the agency enjoys the opportunity to argue for withholdings. *See, e.g.*, *M.K. v. U.S. Dep't of Justice*, 96 Civ. 1307, 1996 WL 509724, at *3 (S.D.N.Y. Sep. 9, 1996). To the extent FOIA's constructive exhaustion provision is extended to the fee waiver context, it should be applied analogously.[2]

---

[1] EPA respectfully refers the Court to EPA's initial brief for definitions of the capitalized terms and abbreviations used herein.

[2] While EPA FOIA regulations contain a provision stating that, "[i]f a requester seeks judicial review because the Agency has not responded in a timely manner, any further action on an appeal will take place through the lawsuit," 40 C.F.R. § 2.104(j)(4), the agency interprets this pro-
(continued…)

Moreover, even if the proceeding below was deemed to have "closed" upon NRDC's commencement of litigation, the Court has the authority to allow the administrative record to be supplemented to ensure that the Court has a full understanding of the agency's decision. Although the general rule in record-review cases is that review is limited to the record compiled during the administrative proceeding, "[c]ourts have . . . carved out some exceptions to that rule, such as in circumstances where admission [of extra-record evidence] is necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Rochester-Genesee Reg'l Transp. Auth. v. Hynes-Cherin*, 531 F. Supp. 2d 494, 517 (W.D.N.Y. 2008) (citations and internal quotation marks omitted); *see also, e.g.*, *Moody Hill Farms v. U.S. Dep't of Interior*, 95 Civ. 11001 (RWS), 1996 WL 474209, at * 4 (S.D.N.Y. Aug. 20, 1996) ("Courts have . . . permitted litigants to supplement the administrative record with additional material that explains the administrative officials' basis for their action."). Courts may allow such supplementation in particular when the additional materials are "merely explanatory of the original record." *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 82 (2d Cir. 2006).

This exception applies here. The Denial Letter does not introduce any new evidence into the record, but merely clarifies the reasons for the agency's fee waiver denial. In doing so, the letter relies entirely on information provided by NRDC and found in public dockets, which NRDC's own fee waiver request and appeal incorporated by reference. *See* Turner Decl., Ex. A

---

vision simply to advise requesters that they should deal with the agency's litigation counsel after the initiation of a lawsuit and that any further administrative action will be coordinated with and relayed through litigation counsel, as was done here. *See* NRDC Opening Br. at 7 n.3 (stating that Denial Letter was transmitted through EPA's litigation counsel). The agency does not interpret this regulation as granting any rights, substantive or procedural, to requesters. *See Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 86 (2d Cir. 2003) (agency interpretation of its own regulations entitled to deference).

at 2 & Ex. C at 4.  Because the Denial Letter is thus "merely explanatory" of material already in the record, and because it will indisputably aid the Court in determining whether there is a satisfactory basis for the agency's fee waiver denial, the Court should consider it.

Contrary to NRDC's protestations, *see* NRDC Opp. at 4, there would be no injustice in the Court's consideration of the Denial Letter.  The Denial Letter simply constitutes the agency's response to NRDC's fee waiver appeal – the very point of which was to seek a final decision from the agency.  NRDC thus cannot claim any unfair "surprise" at its issuance.[3]  Ideally, the agency's decision would have been made sooner, but the point remains that, without it, the record before the Court would be incomplete and one-sided.  It would hardly serve any interest in fairness for the Court to adjudicate the case based on NRDC's arguments below while turning a deaf ear to the arguments that the agency has in response.

**B.**     **The Court Should Uphold EPA's Fee Waiver Denial**

As to NRDC's various arguments addressed to the merits of EPA's fee waiver denial, none withstands scrutiny, as explained below.

*1.     Regardless of Its Non-Commercial Status, NRDC Must Demonstrate That Disclosure Is Likely to Contribute Significantly to Public Understanding*

NRDC begins by attempting to water down the applicable standard of decision.  Based on its non-commercial status, NRDC claims that it need only demonstrate "'*a minimal showing of [its] legitimate intention* to use the requested information in a way that contributes to public understanding of the operations of government agencies.'"  NRDC Opp. at 5 (quoting *Inst. for*

_____

[3] Although NRDC complains that "EPA's position would permit it to expand the administrative record unilaterally at any time, even after a summary judgment motion has been filed and fully briefed," NRDC Opp. at 4, no such scenario is presented here.  EPA issued the Denial Letter well before NRDC moved for partial summary judgment in this litigation, and thus NRDC had prior notice of the agency's position before briefing the case.

*Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 290 F. Supp. 2d 1226, 1232 (D. Or. 2006) (emphasis added by NRDC)).  This gloss on the standard appears in a single case, however, and decidedly does *not* reflect the actual statutory language.

The showing required by the statutory language is not "minimal," nor does it turn merely on the requester's "intention."  Rather, the statute requires a requester to show that disclosure is in fact "likely to contribute" – "significantly" – to public understanding of governmental operations.  5 U.S.C. § 552(4)(A)(iii).  Non-commercial requesters must clear this hurdle just like any other requesters, and the Court should reject any suggestion by NRDC that it lower the bar.  *See McClain v. U.S. Dep't of Justice*, 13 F.3d 220, 221 (7th Cir. 1993) ("No matter *who* asks, a waiver of duplication fees depends on proof that disclosure would 'contribute significantly to public understanding of the operations or activities of the government.'") (emphasis in original); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) ("Legislative history . . . makes plain that public interest groups must satisfy the statutory test."); *VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55, 59 (D.D.C. 2002) (nonprofit status "does not relieve [requester] of its obligation to satisfy the statutory requirements for a fee waiver").

2.  NRDC Has Failed to Demonstrate That the Disclosure Sought Is Likely to Contribute Significantly to Public Understanding

   a.  NRDC's Attempt to Reframe the Justification for Its Fee Waiver Request Should Be Rejected

NRDC fails to meet the fee waiver standard here.  As explained in EPA's initial brief, NRDC argued below that its request will significantly contribute to public understanding of the reasons for EPA's decision to consider modifying the allowable PHI for EBDC use on potatoes.  Yet, NRDC failed to show what it was likely to add on the subject beyond pre-existing public knowledge, in light of EPA's already public justification of the decision.  *See* EPA Br. at 11-15.

In its opposition brief, NRDC does not contest that the EPA has amply explained its reasons for deciding to consider modifying the PHI for EBDC use on potatoes. Nor does NRDC point to any evidence in the administrative record sufficient to raise suspicions of improper influence or ulterior motives behind the decision. Instead, NRDC disavows the notion that its fee waiver request is even premised on this decision. "No matter how many times EPA says this," NRDC asserts, "it is not true." NRDC Opp. at 6.

NRDC's fee waiver appeal speaks for itself, however. In that submission, NRDC explained the public interest underlying its request as follows:

> EBDCs are pesticides of widespread public health concern. At issue in the matter of Request to Reduce Pre-Harvest Interval (PHI) for EBDC Fungicides on Potatoes, EPA-HQ-OPP-2007-0181, is whether pesticide products containing EBDC may be lawfully used on potato crops within 14 and 3 days of harvest, or whether, alternatively, such use may result unreasonable [*sic*] adverse effects on human health and the environment . . . . Clearly, this administrative proceeding, to which our FOIA request directly relates, has public health implications for anyone who consumes potatoes grown in the United States.

Turner Decl., Ex. C, at 4. Likewise, in the portion of the appeal addressing the need for a "significant" contribution to public understanding, NRDC explained as follows:

> EPA is proposing to reverse a long-standing safety determination restricting the use and application of EBDC fungicides on potatoes nationwide, in response to a request from the chemical companies that manufacture EBDCs. The basis for EPA's proposed reversal, and the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies, are matters of clear public interest. NRDC seeks documents, currently shielded from public review, that relate to EPA's communications with the industry and other third parties about the EBDCs and this proposed reversal. These documents would contribute "significantly" to the public's understanding of an important food safety matter of national relevance, and the basis for EPA's decision to reverse itself on the question of necessary protections for children's health.

*Id.* NRDC's subsequent complaint filed in this litigation describes the purpose of its FOIA request in the same way: "To uncover information relating to EPA's proposed reversal of this

-5-

long-standing safety measure restricting the use of EBDCs on potatoes nationwide, NRDC submitted a FOIA request to EPA on December 13, 2007."

Thus, it is rank revisionism for NRDC to suggest that the basis for its fee waiver request was anything other than the putative public interest in discovering the reasons for EPA's decision to consider modifying the allowable PHI for EBDC use on potatoes (a decision that NRDC continues to erroneously describe as a "reversal"). This was *precisely* the justification proffered for the fee waiver request before the agency, and that is the justification that NRDC must defend now. Again, it has failed to do so. EPA has extensively explained its reasons for deciding to consider modifying the PHI for EBDC use on potatoes; and NRDC has not shown that its FOIA request will contribute significantly to the public's further understanding of the matter.

Moreover, even if the Court were to indulge NRDC's attempts to reframe the justification for its fee waiver request, the administrative record does not support the new justification proffered. NRDC now seeks to justify its fee waiver request based on generic claims about an interest in studying "how EPA interacts with outside entities with respect to [EBDC] pesticides and whether those interactions have any discernable impact on EPA decisionmaking." NRDC Opp. at 6. The problem, however, is that NRDC did not establish below that the public has any particular interest in EPA's regulation of EBDCs beyond the ongoing proceeding regarding the allowable PHI for EBDC use on potatoes.[4] Of course, at some level, the public *always* has an in-

---

[4] NRDC claims that it established below that "EBDCs are pesticides of widespread health concern," but the only evidence it cites consists of one of the EBDC reregistration decisions made by EPA in 2005, *see* NRDC Opp. at 6 (citing Ex. A of NRDC's FOIA request), and commentary in an academic journal from 1995 calling for further study of the possible health effects of EBDCs, *see id.* (citing Ex. B of NRDC's FOIA request). These documents do not establish much of anything beyond the fact that EBDCs are regulated by EPA and that their health effects are debated. The same could be said for virtually *any* subject of regulation under EPA's pur-
(continued…)

terest in the possibility of outside influence with respect to *anything* the government does. But an interest so diffuse cannot be enough to satisfy FOIA's fee waiver standard. Otherwise, the standard would be rendered a triviality, and fee waivers would be required for every fishing expedition into government activities no matter how speculative. *See Ctr. for Biological Diversity v. OMB*, 546 F. Supp. 2d 722, 730 -731 (N.D. Cal. 2008) ("[T]his court is wary of allowing the [plaintiff] access to the OMB's documents based upon a generalized allegation that the OMB may be in violation of federal law. Accepting that argument would effectively eliminate the fee waiver analysis since any FOIA requester could argue that the requested non-public documents could reveal improprieties within the governmental agency."); *McClellan*, 835 F.2d at 1285 (rejecting similar argument); *cf. Tomscha v. General Services Admin.*, 158 Fed. Appx. 329, 331 (2d Cir. 2005) ("Appellant appears to argue that the public has an all-encompassing interest in agency transparency and fair distribution of tax dollars. We disagree. Appellant seeks disclosure of the justification behind awards given to a single low-ranking employee of the GSA, though he alleges no wrongdoing by that employee, and provides no evidence that the employee was improperly awarded. Such a disclosure would not 'contribut[e] significantly to the public understanding of the operations or activities of the government.'").

          b.    *NRDC's Prior FOIA Requests Are Irrelevant*

NRDC also attempts to support its fee waiver request by pointing to "media coverage" generated by two prior FOIA requests by NRDC that it alleges were similar to the one here. NRDC Opp. at 6. The circumstances underlying those prior requests are not before this Court,

---

view. The documents hardly establish any specific public interest in the possibility that outside entities have improperly influenced EPA's regulation of EBDCs – certainly not an interest sufficient to justify requiring the public to subsidize an effort by NRDC to sift through five years' worth of agency documents in an attempt to find any "discernable impact" of outside influence.

however. It is unknown, in particular, what fee waiver justifications were proffered as to those requests and whether the justifications were more compelling than the one asserted here. Requests for fee waivers are considered on a "case-by-case basis." *Media Access Project v. FCC*, 833 F.2d 1063, 1065 (D.C. Cir. 1989). Thus, it is beside the point whether NRDC has been able to generate media coverage from any past FOIA requests; the question is whether public understanding is likely to be significantly advanced by the FOIA request at bar. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 99 Civ. 2315, 2000 WL 33724693, at *5 (D.D.C. Aug. 17, 2000) ("[The requester's] past record in uncovering information is simply irrelevant. Under the FOIA, the analysis focuses on the subject and impact of the particular disclosure, not the record of the requesting party."). By the same token, the fact that EPA may have granted NRDC fee waivers on its two past requests implies nothing about whether it was obligated to grant one here. *See* U.S. Dep't of Justice, *Freedom of Information Act Guide: Fees and Fee Waivers*, http://www.usdoj.gov/oip/fees.htm, n. 126 (citing *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 97 Civ. 2089, slip op. at 14 (D.D.C. Jul. 14, 1998) (finding it "wholly irrelevant" that requester received fee waivers in other cases); *Dollinger v. USPS*, 95 Civ. 6174T, slip op. at 7-8 (W.D.N.Y. Aug. 24, 1995) (finding agency was not bound by previous decision on fee waiver for similar request from same requester)).

    c.  *NRDC's Remaining Arguments Are Unpersuasive*

NRDC's miscellaneous other arguments do not alter the analysis. First, NRDC argues that the public documents from the ongoing potato-PHI proceeding do not preclude a fee waiver for its FOIA request, "because the FOIA request only seeks non-public records" and thus "[n]one of the public documents from the administrative proceeding provide the information that NRDC seeks through this FOIA request." NRDC Opp. at 8. The same line of argument was tried and rejected in *VoteHemp*, however. Plaintiff there argued that "the vast bulk of the records sought –

some 32,000 pages to be searched . . . [–] have never been made public [and] DEA's reasoning for issuing the 'Interpretive Rule' occupies but a few pages in the Federal Register." 237 F. Supp. 2d at 60.  Nonetheless, the Court refused to grant a fee waiver given that DEA's decision in the Federal Register "unambiguously and thoroughly" explained the reason for the agency's action, and plaintiff had failed to give a convincing explanation of what additional significant information was likely to be unearthed by its FOIA request.  *Id.* at 60-61.  The same is true here.

Second, NRDC argues that EPA's position is "based on unsubstantiated claims that the requested records do not contain meaningful information."  NRDC Opp. at 8.  To the contrary, EPA has substantiated its claims by citing the extensive information available on the public record that comprehensively addresses the public interest proffered for NRDC's fee waiver request.  The burden lies with NRDC to show that its request will significantly enhance public understanding beyond this information; the burden is not on EPA to show otherwise.  *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994) (burden lies with requester).

Third, NRDC argues that "EPA's claim that it has 'thousands' of records responsive to NRDC's FOIA request actually favors NRDC's entitlement to a fee waiver here," because "[t]hat frequency of communication with outside parties in and of itself would be a significant fact that the public should know."  NRDC Opp. at 9 (citation omitted).  What EPA has said, however, is that NRDC's request would encompass thousands of records because the agency regularly communicates with EBDC manufacturers regarding various *routine*, *administrative* matters.  It would hardly come as significant news to the public that a federal agency is in regular contact with the entities it regulates concerning such matters.

Fourth, and finally, NRDC argues that it does not need to "prove malfeasance on the part of EPA in order to demonstrate entitlement to a fee waiver," "because nowhere in NRDC's

FOIA request or its administrative appeal does NRDC base its fee waiver request on a claim that there has been an improper or corrupt influence on EPA." NRDC Opp. at 10. In fact, NRDC's fee waiver appeal does, repeatedly, raise the possibility of improper outside influence on the agency's decision to consider modifying the PHI for EBDC use on potatoes. *See* Turner Decl., Ex. C at 4 (justifying request based on interest in knowing "the extent to which EPA has been heavily influenced in its decision by communications with or lobbying by the chemical companies"); *id.* at 5 (stating that disclosure would "inform the public about EPA's collaboration with chemical companies to weaken safety standards for EBDCs"). However, EPA's argument is not that NRDC must "prove malfeasance" at the outset in order to obtain a fee waiver. EPA's argument, instead, is that NRDC must put forward some reasonably specific basis as to why it expects that its FOIA request will shed significant light on an agency decision that has already been "unambiguously and thoroughly" explained in the public record. *VoteHemp*, 237 F. Supp. 2d at 60. NRDC *could* do so by establishing some specific reason to suspect malfeasance; but it has not done so here. Nor has it provided any other reason to regard the agency's decision as defective or otherwise in need of further explanation. For this reason, consonant with *VoteHemp*, NRDC's fee waiver request was properly denied by the agency.

## CONCLUSION

For the reasons set forth above and in EPA's initial brief, the Court should uphold EPA's fee waiver denial.

Dated: New York, New York  
       July 24, 2008

MICHAEL J. GARCIA  
United States Attorney for the  
Southern District of New York  
Attorney for Defendant

By:    */s/ Serrin Turner*  
SERRIN TURNER  
Assistant United States Attorney

-10-