```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NATURAL RESOURCES DEFENSE COUNCIL,      :
INC.,                                   :
                        Plaintiff,      :    08 Civ. 2443 (DLC)
                                        :
            -v-                         :    OPINION AND ORDER
                                        :
UNITED STATES ENVIRONMENTAL PROTECTION  :
AGENCY,                                 :
                        Defendant.      :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
Thomas Cmar
Natural Resources Defense Council
1200 New York Avenue, N.W., Suite 400
Washington, D.C. 20005

Nancy S. Marks
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011

For Defendant:
Serrin Andrew Turner
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York 10007

DENISE COTE, District Judge:

This Opinion addresses cross-motions for partial summary

judgment filed by the parties in this Freedom of Information Act

("FOIA") case.  Plaintiff, a non-profit environmental

organization, sought a fee waiver in connection with its request

for certain records from the defendant, the United States Environmental Protection Agency ("EPA").  The EPA denied plaintiff's request for a fee waiver.  Having exhausted its administrative appeals, plaintiff now moves for summary judgment on its complaint that the EPA wrongfully denied the fee waiver. The EPA opposes plaintiff's motion and cross-moves for partial summary judgment.  For the following reasons, the parties' motions for summary judgment are each granted in part.

BACKGROUND

The following facts are undisputed.  Plaintiff Natural Resources Defense Council, Inc. ("NRDC") is a large, well-known non-profit environmental organization.  Its mission statement declares that the organization's purpose "is to safeguard the Earth: its people, its plants and animals, and the natural systems on which all life depends."  For more than twenty years, NRDC has been active in the development, enforcement, and reform of pesticide laws, including those governing a family of pesticides known as ethylene bisdithiocarbamates ("EBDCs").[1]

---

[1]    EBDCs are regulated by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq.  FIFRA requires the "registration" and periodic "reregistration" of covered pesticides with the EPA in order to be distributed and sold in the United States.  According to the EPA, under FIFRA, the Agency "registers a pesticide only after conducting an extensive scientific review of the risks, and, when appropriate, the benefits of the pesticide to determine whether the pesticide causes unreasonable adverse effects to human health or the environment.  If the pesticide is determined to have such

NRDC maintains that widespread use of EBDCs could result in dangerously high levels of exposure to a carcinogenic chemical that is produced when EBDCs degrade or are ingested on fruits or vegetables.

EBDCs were first registered in the United States in 1948. In 1992, the EPA restricted the use of EBDCs on potatoes by issuing a "Notice of Intent to Cancel and Conclusion of Special Review" (the "NOIC") which required a fourteen-day interval between the last application of EBDCs to potato crops and the potatoes' harvesting. The EPA allowed a shorter pre-harvest interval of only three days for EBDC use in nine states where potato crops were affected by blight late in the harvest cycle.[2] At the time, the EPA believed that the lack of any interval between EBDC application and harvesting could result in unacceptable dietary risks.

EBDCs came due for periodic reregistration with the EPA in 2003. During the reregistration process, an EBDC industry task force requested that the EPA alter its EBDC regulations and approve a nationwide three-day pre-harvest interval. Following the publication of certain reports assessing the health risks and mitigation options associated with EBDCs, the EPA determined

effects, EPA may not register the pesticide and any existing registration for the pesticide is subject to cancellation."

[2]    In 1996, the EPA expanded to thirteen the number of states allowed the shorter three-day interval.

that the industry task force's request to alter the EBDC
regulations warranted a hearing.  A notice of hearing was issued
on July 11, 2007, explaining in some detail the basis for the
EPA administrator's decision to hold the hearing.  In
particular, the notice of hearing referenced substantial new
evidence marshaled by the industry task force showing that late
blight was a continuing and growing problem for the nation's
potato crop, and that EBDCs posed a lesser health risk than was
previously thought.  As the EPA notes, the administrator's
decision to initiate a hearing on EBDCs "does not imply that EPA
has finally decided to make the requested modification."
"Rather, a decision to initiate a hearing means only that the
Administrator has determined that the evidence submitted, if
substantiated on the record in the hearing, may materially
affect the evidentiary rationale upon which the prior order was
based."  Notice of Hearing on Request to Reduce Pre-Harvest
Interval for EBDC Fungicides on Potatoes, 72 Fed. Reg. 37,771,
37,774 (Jul. 11, 2007) (the "Notice of Hearing").

On December 13, 2007, NRDC sent a FOIA request to the EPA
for "all records reflecting or relating to any contacts,
meetings, or communications with pesticide registrants and other
outside entities or individuals concerning [EBDCs] and pesticide
products containing EBDC . . . since August 18, 2003."  The
request enumerated eight categories of outside entities as being

4

included in the search.[3]  It also explained that "contacts,

meetings, or communications" with outside entities concerning

requests to reduce the pre-harvest interval for EBDC use on

potatoes were included in this FOIA request.  Finally, the

request identified nine EPA officials who were likely to have

responsive documents.[4]

Pursuant to a provision in FOIA which provides for fee

waivers for the information requested "if disclosure of the

information is in the public interest because it is likely to

contribute significantly to public understanding of the

operations or activities of the government and is not primarily

in the commercial interest of the requester," 5 U.S.C. §

552(a)(4)(A)(iii), NRDC asked the EPA to waive the fee normally

associated with FOIA requests.  NRDC explained that the

requested records would "shed light on the breadth and variety"

of EPA discussions of EBDCs with pesticide registrants and

others, would inform the public "on the nature and extent" of

those contacts, and would contribute "to public understanding of

the legal basis, policy justifications, and public health

implications of governmental agency risk assessments and

---

[3]     For example, the National Potato Council and the chemical
company DuPont were two of the eight enumerated in the request.

[4]     Among these individuals were four employees of the Office
of Pesticide Programs and five employees of the Office of
General Counsel.

potential regulatory action or inaction."  In support of its
waiver request, NRDC attached exhibits purporting to show the
public health concerns surrounding use of EBDCs, as well as
documentation of the organization's "proven ability to digest
and disseminate such information quickly and efficiently" and
its "long history of incorporating information obtained through
FOIA into reports, articles and other communications," thus
"illustrat[ing] NRDC is well prepared to convey to the public
any relevant information it obtains through this records
request."

    By letter dated December 28, 2007, Larry Gottesman,
National FOIA Director for the EPA, rejected NRDC's request for
a fee waiver.  In one brief paragraph, Gottesman informed NRDC
that its request had been denied because "the material requested
is not in the public interest because it is not likely to
contribute significantly to public understanding of government
operations or activities."  The letter apprised NRDC of its
right to appeal the fee waiver denial through the EPA's
administrative appeals protocol.

    NRDC filed a timely administrative appeal on January 25,
2008, and included additional material substantiating its
eligibility for a fee waiver.  In its appeal, NRDC explained
that EBDCs are "pesticides of widespread public health concern"
and the "EPA is proposing to reverse a long-standing safety

determination restricting the use and application of EBDC
fungicides on potatoes nationwide, in response to a request from
the chemical companies that manufacture EBDCs."  Accordingly,
NRDC claimed, the documents sought were important to the public
because they would shed light on "the extent to which EPA has
been heavily influenced in its decision by communications with
or lobbying by the chemical companies."  Having received no
reply to its appeal, NRDC commenced this action against the EPA
on March 11, 2008, seeking principally a declaration that the
EPA has violated FOIA by failing to produce the records
requested by NRDC, and an order requiring the EPA to produce
those records at no cost to NRDC within twenty days.[5]

On April 25, 2008, EPA assistant general counsel Kevin M.
Miller wrote to NRDC and, in a nine-page missive, rejected its
appeal of the fee waiver denial.[6]  Evaluating NRDC's request for
a fee waiver under the factors enumerated in FOIA as well as the
EPA's implementing regulations, the EPA determined that the
information sought by NRDC lacked "informative value" and would

---

[5]    Pursuant to the EPA's regulations, the agency will "do no
further work" on NRDC's FOIA request until the fee waiver issue
is resolved.  See 40 C.F.R. § 2.107($\underline{l}$)(6).

[6]    The denial letter was transmitted to NRDC by Serrin Turner,
the Assistant United States Attorney for the Southern District
of New York representing the EPA in the instant litigation.  The
Government admits that "[i]deally" the agency's denial letter
would have been issued sooner, but contends that the post-
litigation service of the denial letter is timely.

not make a "significant contribution to public understanding of government operations or activities." First, the denial letter indicated that the agency had established a publicly available docket of information concerning EBDC regulation collected during the EBDC reregistration procedure. Based in large part on the existence of this trove of publicly available information concerning EBDC regulation, the EPA determined that "[t]here is no reason to believe that your request will likely lead to an increased public understanding of EPA's review of EBDC given the vast amount of information already available in the public domain." The EPA accused NRDC of ignoring this publicly available information in making its FOIA request, faulting the organization for not addressing the "administrative process that has taken place, the available docket, or the explanations provided to the public in the Federal Register notice." The denial letter continued:

> NRDC simply argues that non-public information will substantially increase public knowledge about the basis of EPA's decision to allow the hearing process to move forward. . . . NRDC appears to suggest that a fee waiver must be granted any time a request asks for nonpublic information concerning the basis for an agency's decision —- even though the basis for the agency's decision has been fully explained on the public record, and the requester has put forward no reason to believe that this public explanation was presented in bad faith.

Second, the EPA regarded NRDC's FOIA request as overly broad, finding that it "is not limited to information concerning the health effects of EBDCs, but instead encompasses all documents reflecting communication with outside entities concerning EBDCs, regardless of the specific subject matter of the communication." NRDC's broadly worded request, the EPA explained, "would encompass potentially thousands of documents, many of a routine nature, that have nothing to do with EPA's decision-making in the administrative proceeding at issue."  The EPA characterizes the FOIA request as a fishing expedition that extends "far beyond the justification proffered for [NRDC's] fee waiver request."

NRDC moved for partial summary judgment on June 3, 2008. The EPA opposed NRDC's motion and cross-moved for partial summary judgment on July 7.  The motions were fully submitted on July 24.

DISCUSSION

I.    FOIA Framework

FOIA was enacted in 1966 "to improve public access to information held by government agencies." Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n, 585 F.2d 1382, 1384 (2d Cir. 1972).  It "expresses a public policy in favor of disclosure so that the public might see what activities federal agencies are engaged in." A. Michael's Piano, Inc. v. F.T.C.,

18 F.3d 138, 143 (2d Cir. 1994).  The act is intended to "ensure
an informed citizenry, vital to the functioning of a democratic
society, needed to check against corruption and to hold the
governors accountable to the governed," NLRB v. Robbins Tire &
Rubber Co., 437 U.S. 214, 242 (1978), and requires a federal
agency to disclose records in its possession unless they fall
under one of nine enumerated and exclusive exemptions, 5 U.S.C.
§ 552(a)(3)-(b); see also Dep't of the Air Force v. Rose, 425
U.S. 352, 361 (1976).

　　　Although requesters must pay reasonable charges associated
with processing their requests, 5 U.S.C. § 552(a), FOIA section
552(a)(4)(A)(iii) requires agencies to waive fees for requesters
able to demonstrate that "disclosure of the information is in
the public interest."  Judicial review of denials of fee waivers
is available only after a requester has exhausted specified
administrative remedies.  5 U.S.C. § 552(a)(6)(A)(i), (ii).  A
requester is considered to have constructively exhausted
administrative remedies and may seek judicial review immediately
if the agency fails to answer the request or make a
determination with respect to the requester's appeal of a denial
within twenty days.  5 U.S.C. § 552(a)(6)(c).

　　　The EPA has promulgated regulations governing the issuance
of FOIA fee waivers.  "To determine whether the first fee waiver
requirement is met," the EPA considers four factors:

(i) The subject of the request: Whether the
subject of the requested records concerns
"the operations or activities of the
government."  The subject of the requested
records must concern identifiable operations
or activities of the Federal government,
with a connection that is direct and clear,
not remote.

(ii) The informative value of the
information to be disclosed: Whether the
disclosure is "likely to contribute" to an
understanding of government operations or
activities.  The disclosable portions of the
requested records must be meaningfully
informative about government operations or
activities in order to be "likely to
contribute" to an increased public
understanding of those operations or
activities. . . .

(iii) The contribution to an understanding
of the subject by the public is likely to
result from disclosure: Whether disclosure
of the requested information will contribute
to "public understanding."  The disclosure
must contribute to the understanding of a
reasonably broad audience of persons
interested in the subject, as opposed to the
individual understanding of the requester.
A requester's expertise in the subject area
and ability and intention to effectively
convey information to the public will be
considered. . . .

(iv) The significance of the contribution to
public understanding: Whether the disclosure
is likely to contribute "significantly" to
public understanding of government
operations or activities.  The public's
understanding of the subject in question, as
compared to the level of public
understanding existing prior to the
disclosure, must be enhanced by the
disclosure to a significant extent.  FOI
Offices will not make value judgments about
whether information that would contribute

> significantly to public understanding of the
> operations or activities of the government
> is "important" enough to be made public.

40 C.F.R. § 2.107(l)(2)(i)-(iv).

"The district court . . . must review an agency's
determination on a fee waiver issue de novo, but only with
reference to the record before the agency." Carney v. U.S.
Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994). "To
establish his right to a fee waiver under the public interest
provision, the burden [is on the requester] to establish that
the disclosure of information was in the public interest and was
not primarily in his commercial interest." Id. As the United
States Court of Appeals for the D.C. Circuit has observed,[7] "fee
waiver requests must be made with reasonable specificity . . .
and based on more than conclusory allegations." Judicial Watch,
Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation
omitted). Further, a court must be "mindful that Congress
amended FOIA to ensure that it be 'liberally construed in favor
of waivers for noncommercial requesters.'" Id. (quoting 132
Cong. Rec. 27,190 (1986) (Sen. Leahy)).

---

[7]    The Second Circuit has opined on the FOIA fee waiver
provision in only one case: Carney. The Second Circuit has
evidenced a willingness to look to the law of other circuits --
particularly the D.C. Circuit -- in the area of FOIA, even when
it has not specifically adopted other circuits' law. See, e.g.,
Inner City Press/Community on the Move v. Bd. of Governors of
Federal Reserve Sys., 463 F.3d 239, 244-45 (2d Cir. 2006); Tigue
v. U.S. Dep't of Justice, 312 F.3d 70, 77-78 (2d Cir. 2002);
Carney, 19 F.3d at 814.

II.  Analysis

     As an initial matter, the parties agree that this dispute
must be settled only "with reference to the record before the
agency."  Carney, 19 F.3d at 814.  They dispute, however,
whether the EPA's April 25, 2008 letter rejecting NRDC's appeal
of the fee waiver denial is properly considered part of the
"record before the agency."  The Court need not rule on this
question, however, because even considering the administrative
record as augmented by the April 25 letter, NRDC is entitled to
partial summary judgment on its complaint and must be awarded a
fee waiver for at least a portion of its FOIA request.

     The EPA does not dispute that NRDC is a noncommercial
requester, nor that the fee waiver provision must be construed
liberally for noncommercial requesters.  Upon de novo review of
NRDC's fee waiver application, it is plain that NRDC made its
request to the EPA with "reasonable specificity . . . and based
on more than conclusory allegations."  Judicial Watch, 326 F.3d
at 1312 (citation omitted).  The FOIA request is reasonably
specific, identifying EBDCs as its particular object of inquiry
and specifying a time period for the pertinent records.
Further, the request specifies two categories of documents
likely to be responsive[8] and identifies individuals likely to be

_____

[8]   These two categories include (1) records concerning
contacts between the EPA and each known firm that either

13

in possession of responsive records.  Moreover, to the extent
the request makes any "allegations," those allegations are not
conclusory.  The request documents NRDC's extensive background
in studying and publicizing the enforcement of federal
environmental law, employing specific examples of the ways in
which the organization has used FOIA requests to achieve its
goals.  Several of these FOIA requests concerned inquiries into
the effects of outside influence on federal agencies'
decisionmaking.

     Indeed, the EPA hardly cavils with NRDC's contention that
its FOIA request was reasonably specific and based on non-
conclusory assertions.  Rather, the agency contends that NRDC
has failed to satisfy two of what it terms the "public interest
requirements" of the EPA's regulations implementing the FOIA fee
waiver provision:  whether the disclosure is likely to
contribute to an increased understanding of government
operations or activities, and whether the disclosure is likely
to contribute significantly to public understanding of
government operations or activities as compared to the level of
understanding that existed prior to the disclosure.  As one
court has observed, "these two criteria [are] hopelessly
intertwined."  Project on Military Procurement v. Dep't of Navy,

---

manufactures EBDCs or advocates for their increased use and (2)
records concerning the pending EPA administrative proceeding on
regulation of EBDCs on potatoes.

710 F. Supp. 362, 365 n.8 (D.D.C. 1989).  Moreover, in that
case, as here, "both parties have failed to adequately
distinguish these supposedly discrete considerations."  Id.
Accordingly, the Court will address these two criteria together.

NRDC's FOIA request seeks non-public information about EPA
contacts, meetings, and communications "with pesticide
registrants and other outside entities and individuals"
regarding EBDCs since August 18, 2003.  "In other words," NRDC
explained in its administrative appeal, "the FOIA request seeks
information about how EPA evaluates the safety of these
pesticides, and how EPA relies on advice and information from
outside entities to conduct this evaluation."

The FOIA request touches on an issue of the utmost
importance: How government agencies interact with private
concerns as the agencies set policy affecting the public
interest.  Both the Tenth Circuit and the D.C. Circuit have
recognized that "[a]n understanding of how [a federal agency]
makes policy decisions, including the influence of any outside
groups on this process, is also important to the public's
understanding of the [government]," Forest Guardians v. U.S.
Dept. of Interior, 416 F.3d 1173, 1179 (10th Cir. 2005); see
also Judicial Watch, 326 F.3d at 1313-14, and have therefore
approved fee waivers for requests seeking information tending to
facilitate such an understanding.  Here, NRDC hopes to

"provid[e] independent analysis of currently undisclosed agency records and convey[] that analysis and those records to the public." NRDC's capacity and intentions to do so are not in dispute. Regardless of NRDC's ultimate findings, disclosure of the information it seeks is likely to contribute significantly to the public's understanding of the EPA's decisionmaking process and the role, if any, played by outside groups in that process. To the extent that the records sought by NRDC relate to that purpose, therefore, a fee waiver for its FOIA request is in order.

The EPA raises two principal objections to NRDC's fee waiver request. First, the EPA contends that disclosure of the information sought by NRDC would not significantly contribute to public understanding of government affairs "in light of the vast amount of information already available in the public domain." Specifically, the EPA contends that its decision to hold a hearing on the pre-harvest interval for application of EBDCs to potatoes was justified extensively in publicly available documents; because NRDC "has put forward no reason to believe that this public explanation was presented in bad faith," the information NRDC seeks is either duplicative of what is already in the public record or a mere "fishing expedition" for evidence of the EPA's wrongdoing. Second, the EPA contends that NRDC's fee waiver request was overbroad because "the scope of [NRDC's]

FOIA request extends far beyond the justification proffered for
[its] fee waiver request."  The EPA claims that NRDC's FOIA
request "would encompass potentially thousands of documents,
many of a routine nature, that have nothing to do with EPA's
decision-making in the administrative proceeding at issue."

The EPA's first objection must be rejected.  The EPA
readily concedes, as well it should, that the public has an
interest in the allowable pre-harvest interval for EBDCs in
potatoes.  America's potato crop is a significant agricultural
commodity.  Potato blight would have serious commercial
consequences for many states.  At the same time, potatoes are a
major component of the American diet, and the health of the crop
has not just commercial but also dietary consequences for the
public.  Thus, the safety of EBDCs and the determination of the
window in which they can be safely and effectively applied to
protect a crop of potatoes is an indisputably important issue
for the public.

Similarly, the Government does not contest that the public
also has a significant interest in how the Government makes
policy decisions regarding the use of EDBCs on potatoes.  Again,
it would be futile for it to suggest otherwise.  Given the
potential impact on public health and the commercial vitality of
the potato crop, the public has a vital interest in insuring
that the Government is making decisions about the use of EBDCs

on potatoes carefully and correctly.  The Government's position
is instead more nuanced.  It argues that it has already made a
fulsome disclosure and that NRDC's request for additional
records would not contribute significantly to the public
understanding of the EPA's decisionmaking process.  It is true
that the Notice of Hearing on the modification of the
cancellation order for EDBCs extensively describes the issues to
be weighed in the hearing and the questions to be answered
before the three-day pre-harvest interval is extended
nationwide.[9]  That disclosure does not, however, provide any
meaningful description of the interactions with industry groups
that have influenced the EPA in either framing or developing
Government policy.

The Notice of Hearing discloses the following sequence of
events.  In December 1996, the industry task force submitted its
first request to modify the existing order and to reduce the
fourteen-day pre-harvest interval to three days, effective
nationwide.  The task force then resubmitted the request in
August 2003 as part of the EBDC reregistration process.  In
response, the EPA informed the Task Force that the agency had to
consider the impact of 1996 amendments to two federal statutes,

---

[9]    As the Government also notes, the EPA has established a
publicly available, online docket for the hearing, which
contains links to much of the research adverted to in the Notice
of Hearing, as well as agency memoranda and public comments,
including comments from EBDC registrants.

including FIFRA, "before any action could be taken on the
request". The EPA represented that "[t]o date, EPA has not
taken any substantial actions on the Task Force request. This
Notice represents EPA's determination that the 2003 request to
modify the existing cancellation order merits a . . . hearing."

Thus, the Notice of Hearing does not describe, nor would it
have been expected to describe, what is covered by the NRDC's
FOIA request, to wit, records of all of the "contacts, meetings,
or communications" between the EPA and outside entities and
individuals, including members of the industry task force, since
August 18, 2003. Thus, while the Notice of Hearing publicizes
the critical role of the industry task force in the EPA's
decision to consider a nationwide three-day pre-harvest
interval, it has not described the scope of the contacts between
the agency and outside groups on this issue, the identity of all
of those involved in these discussions, or the content of each
of the communications. See Forest Guardians, 416 F.3d at 1180
("The materials submitted by Forest Guardians in its initial fee
waiver request . . . demonstrate that the existence of the
program [permitting livestock grazing on public lands] is
relatively well-known. The requested records, however, concern
the scope of the program, the extent of public lands attached to
the collateralized grazing permits, and the identities of the
financial institutions involved. This information not only

confirms previously released information on the existence of the collateralization program, but clarifies its scope."); Judicial Watch, 326 F.3d at 1315 (FOIA fee waiver requester seeks "considerably more" than had already been disclosed by the agency).  Thus, to the extent that the EPA's opposition to the fee waiver request is based on the argument that NRDC seeks information that is duplicative of what is already in the public record or information that will not contribute significantly to the public record beyond what the EPA has already disclosed, it fails utterly.

Finally, the EPA suggests that NRDC was required to show bad faith on the part of the agency when it gave its public explanation for the EBDC hearing.  The EPA fee waiver regulations impose no such requirement.  To paraphrase Judicial Watch, the American people have as much interest in knowing that EPA decisions are free from taint as they have in discovering that they are not.  Judicial Watch, 326 F.3d at 1314.  Indeed, one of the cases the EPA cites in support of its argument only serves to strengthen NRDC's position.  In Center for Biological Diversity v. Office of Management & Budget, 546 F. Supp. 2d 722 (N.D. Cal. 2008), the plaintiff had made certain allegations of inappropriate commercial influence in the rulemaking process at issue in its FOIA request.  The court held that the plaintiff "need not allege that the [Office of Management and Budget] did

anything improper with respect to the rulemaking at issue" in order to be granted a fee waiver on its FOIA request.  <u>Id.</u> at 731.  The court concluded that "the public's understanding of governmental activities will increase independent of the specific weight the OMB placed" upon the data at issue since "[m]ere knowledge of the weight [OMB placed on the data] will significantly increase the public's understanding."  <u>Id.</u> Likewise, in this case, NRDC need not make any specific allegation concerning the EPA's wrongdoing.  The public's understanding of EPA decisionmaking will be significantly enhanced by learning about the nature and scope of EPA communication with commercial interests, which NRDC has contended -- and the EPA has not disputed -- the requested documents will reveal.  The NRDC having shown that the information it requests will, among other things, contribute significantly to the public's understanding of government operations and activities "as compared to the level of public understanding existing prior to the disclosure," 40 C.F.R. § 2.107(<u>l</u>)(2)(iv), NRDC is not further required to show that the EPA has acted in bad faith in any disclosures it has made to date or more generally in its decisionmaking.

The two district court cases cited by the EPA in support of its argument that NRDC must show governmental bad faith do not alter this analysis.  Each of these cases concerns FOIA requests

predicated on allegations of government wrongdoing.  In those cases, fee waivers were denied where the requester made, but did not adequately substantiate, an allegation that the Government was involved in some malfeasance.  See, e.g., D.C. Tech. Assistance Org., Inc. v. HUD, 85 F. Supp. 2d 46, 49 (D.D.C. 2000)(request by organization providing technical assistance to public housing residents for back-up email tapes); Am. Fed'n Gov't Employees, Local 2782 v. U.S. Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986)(request by union of government employees seeking every memorandum recommending promotion of a supervisory employee).[10]  Thus, neither the EPA's FOIA implementing regulations nor NRDC's fee waiver request itself placed a burden on NRDC to allege government wrongdoing in order to qualify for waiver of the fee.

---

[10]    The EPA's separate reliance on VoteHemp, Inc. v. DEA, 237 F. Supp. 2d 55 (D.D.C. 2002), is entirely misplaced.  In that case, the district court determined that the requester had a commercial interest in the information sought.  Id. at 65-66. Thus, the liberal construction that this Court must apply to the fee waiver provision in this case was inapplicable in VoteHemp. Moreover, the public interest justification offered by plaintiff in that case falls far short of what NRDC offered here.  The district court held that the plaintiff "clearly" failed to satisfy its burden of demonstrating "with reasonable specificity" how the disclosure will contribute to public understanding.  Id. at 61.  By contrast, for the reasons explained in this Opinion, NRDC's request was reasonably specific and satisfied each of the requirements for a fee waiver.

In contrast to its first argument, the EPA's second argument -- overbreadth -- has merit.  Principally, the EPA contends that "[t]he problem with NRDC's request is not simply that it encompasses 'routine' or 'administrative' material; rather, it is that the request on its face is not limited to documents concerning the allowable [pre-harvest interval] for EBDC use on potatoes, even though it is EPA's alleged 'reversal' on this issue that provides the basis for NRDC's fee waiver request."[11]

NRDC's request for a waiver of the customary fee is predicated on an assertion that the public would benefit from information, in addition to what the EPA has chosen to disclose, concerning the health effects of EBDCs and/or any changes in the pre-harvest interval for the use of EBDCs on potatoes.  As discussed above, that assertion is valid, and the EPA's challenges to NRDC's request for a waiver are baseless.  Nonetheless, a FOIA fee waiver must only be granted to the extent that "disclosure of the information" sought in the underlying FOIA request "is in the public interest."  5 U.S.C. §

---

[11]    There is no exception in FOIA for information touching on "routine, administrative matters," and even such information must be produced and may properly by the subject of a FOIA request underlying a fee waiver application.  To the extent it is encompassed by the narrowed request set forth in this Opinion, such information might be of informational value as NRDC attempts to limn the nature and extent of the EPA's relationship with certain outside entities and individuals.

552(a)(4)(A)(iii).  NRDC's FOIA request, however, is far broader

that its justification for a fee waiver.  It requests all

records of any communication with pesticide registrants and

other outside entities or individuals concerning EBDC, without

limitation.  To the extent that NRDC has not shown a public

interest in its FOIA request, its application for a fee waiver

must be denied.

Accordingly, NRDC shall be granted a fee waiver for the

EPA's production of:

> All records reflecting or relating to any
> contacts, meetings, or communications since
> August 18, 2003, with pesticide registrants
> and other outside entities or individuals
> concerning the health effects of ethylene
> bisdithiocarbamate ("EBDC") and pesticide
> products containing EBDC (including, but not
> limited to, mancozeb, maneb, and metiram),
> and/or the pre-harvest interval for the use
> of EBDC and pesticide products containing
> EBDC on potatoes.

This request shall include, but is not limited to, the records

specifically identified by the NRDC in its December 13, 2007

FOIA and fee waiver requests, and is subject to NRDC's

definition of "records" as contained in that request.

CONCLUSION

Plaintiff's June 3 motion for partial summary judgment and

defendant's July 7 motion for partial summary judgment are

granted in part.

SO ORDERED:

Dated:    New York, New York
          August 19, 2008

                                    DENISE COTE
                           United States District Judge